WELLAUER and another vs. FELLOWS.

*December 20, 1879 — January 7, 1880.*

SALE OF GOODS. *(1) When receiver of goods cannot disclaim purchase. (2) "Terms Cash," on unreceipted bill.*

1. One who receives goods sent to him, knowing that the sender claims that the receiver has purchased them of him, cannot, in the absence of mistake or fraud, appropriate them to his own use, and then disclaim the purchase.

2. The word "Terms Cash" upon an unreceipted bill of goods sent by a wholesale to a retail dealer, cannot be held, as matter of law, to imply that the goods were paid for before they were shipped.

APPEAL from the Circuit Court for Kewaunee County.

The case is thus stated by Mr. Justice TAYLOR:

" This is an action to recover for the balance due the appellants [plaintiffs] on account for goods sold and delivered by them to the respondent.

" The evidence on the part of the appellants showed that they were wholesale grocers in the city of Milwaukee, and the respondent a merchant of Ahnapee, in the county of Kewaunee, and that, at the request of one Vader, a commission man in the city of Milwaukee, with whom the respondent had dealings, the appellants shipped to the respondent, between the first of January, 1876, and February 25th of the same year, goods of the value of $286.87. The appellants, as directed by said Vader, charged the goods on their books to the respondent.

" The bills accompanying the goods sent to respondent were all in substantially the following form:

'MILWAUKEE, January 5, 1876.

'Mr. C. L. Fellows, Ahnapee,

'Bought of JACOB WELLAUER,

'IMPORTER AND WHOLESALE DEALER IN CHEESE, GROCERIES,

'ETC., 479 and 499 East Water Street.

'Terms Cash.

'Forwarded, for your account and risk, by schooner St. Lawrence, Captain August Schunerman:'

" [Here follows a statement of articles sold, and price of same.]

" There were three bills of goods sent. On the 24th of February, 1876, when the last bill of goods was sent, Vader paid on the account, for the respondent, the sum of $130. The proof clearly showed that the bills for the goods were received by the respondent at or about the time the goods were; that respondent kept the goods, and sold them as his own; that he never notified the appellants that he had not ordered the goods, nor that Vader was not authorized to order them on his account; that appellants sent him two statements of their

Wellauer and another vs. Fellows.

account against him, and requested payment of the same; and that no attention was given to the matter by the respondent, until the 20th of June, 1876, after the appellants had drawn upon him for the balance of their account.

"In his letter of that date he denied that he had ever ordered any goods of the appellants, or given Vader any authority to order them on his account; claimed that he had a receipt from Vader showing payment in full for the goods sold; and further claimed that the bills for the goods were all made out to Vader. On the trial, no such receipts were shown by the respondent and the bills produced by him showed that the statement in his letter that the bills were made out to Vader, was false. The plaintiffs also showed that the goods were shipped to respondent, and on his account.

"Some evidence was given by the appellant as to the meaning of the words 'Terms Cash' as used in the bills. The explanation was, that upon such bills it was expected that the goods would be paid for on delivery, or within 30 days thereafter. None of the bills were receipted. The evidence further showed that when the goods were sold *Jacob Wellauer* was doing business alone, but that before the commencement of this action *John Hoffman* had become his partner in business, and that the account belonged to the firm.

"Upon this evidence the plaintiffs were nonsuited; and they appealed from the judgment."

For the appellants, there was a brief by *G. G. Sedgwick*, and oral argument by *Mr. Sedgwick* and *Wm. F. Vilas*.

For the respondent, there was a brief by *H. G. & W. J. Turner*, and oral argument by *W. J. Turner*.

TAYLOR, J. We are very clear that the court erred in directing a nonsuit in this case. It seems to us that there was not only evidence to carry the case to the jury, but that, unexplained, there was evidence upon which the jury must have found for the plaintiffs. The court seems to have labored

under the impression, that, because the defendant denied in his letter, written long after the goods were received, the authority of Vader to purchase goods upon his account, except for cash, the plaintiffs had made out no cause of action against the defendant. This letter was an unsworn statement of the defendant in his own favor, made after the goods were delivered and used by him, and should have very little weight in determining the question of the agency of Vader.

There certainly was some evidence to go to the jury upon the question of the authority of Vader to order the goods for the defendant, and upon that point the case should have been submitted to the jury; but, whether the agency of Vader was proved or not, there was abundance of evidence tending to show that the respondent bought the goods of the appellants. Leaving out of view altogether the fact that the goods were sent to the respondent at the request of Vader, the evidence was sufficient to have sustained a verdict in favor of the appellants.

The goods were sent by the appellants to the respondent, accompanied with a statement that he had bought the goods of them for a stated price, which price they expected him to pay either on the receipt of the goods or within thirty days thereafter. This is the fair construction of the bills sent with the goods. The respondent received the goods upon this statement without objection, and converted them to his own use.

After doing this, he is estopped from insisting that he did not buy the goods. He was notified that the appellants, who sent the goods, supposed they were selling them to him, and that they expected him to pay for them. If he did not intend to receive the goods as purchased by him of the appellants, he should have refused to receive them; but, having received them without objection, there would be no justice in permitting him to say afterwards that he did not buy them, and would not, therefore, pay for them. The only excuse the de-

Wellauer and another vs. Fellows.

fendant himself makes for his refusal to pay for them, is that he supposed they were paid for by Vader, and the false excuse that the goods were billed to Vader. On the argument, some stress was laid upon the words, "Terms Cash," in the bills. It is said that these words in the bills implied that the goods were paid for before they were shipped to the defendant. The proof, however, shows that such is not the meaning of the words; and the fact that the bills, when received by the defendant, were not receipted "paid," must have advised the defendant that they were not in fact paid for when shipped to him. Had the goods been paid for by Vader or any other person, the bills would, undoubtedly, have been receipted. The respondent had no reason, upon the face of the bills, to suppose the goods had been paid for; and, having received the goods as sold to him, and converted the same to his own use, justice demands that he should pay for them, though they had never been ordered by himself or any other person on his account.

The facts of this case present a much stronger case in favor of the plaintiffs than the case of *Cooper v. Schwartz*, 40 Wis., 54, in which this court held that, upon the evidence offered, the question of the purchase by the defendant should have been submitted to the jury.

The defendant having received the goods from the plaintiffs, upon their claim that he had purchased from them, cannot, in the absence of mistake or fraud, appropriate them to his own use, and then disclaim the purchase. *Ballston Spa Bank v. Marine Bank*, 16 Wis., 120; *Paine v. Wilcox*, 16 Wis., 202–217; *Beal v. Ins. Co.*, 16 Wis., 241.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.