### M. P. LEVYEAU *vs.* CHARLES CLEMENTS.

Suffolk.    November 13, 1899. — March 2, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Conversion — Fraud — Action.*

If A. contracts to make for B. certain dies of monuments from drawings or photo-
graphs furnished by B., and also, by a separate contract, to manufacture for B.
a specified number of folders by printing impressions from the dies, and then
contracts with C. to print the folders and also to strike off for A. some extra
copies of the folder for the purpose of advertising his own business of making
dies, without B.'s knowledge, and C. delivers to B. the whole number of folders
printed, A. is precluded, by his fraudulent act in procuring them to be made for
his own use, from maintaining an action against B. for the conversion of the
extra folders, upon the latter's refusal to deliver them to him.

TORT, for the conversion of eighty pamphlets called " Stock
Folio No. 7." Trial in the Superior Court, before *Sheldon*, J.,
who reported the case for the determination of this court, in sub-
stance as follows.

The defendant is a wholesale granite and monument dealer,
and the plaintiff is in the engraving business. On January 8,
1897, the plaintiff submitted to the defendant a bid for making
eighty-seven cuts or dies from the defendant's drawings or pho-
tographs of monuments. On January 11 he submitted another
bid for printing from the cuts five thousand copies of " Folio
No. 7." The defendant subsequently accepted both bids, the
two contracts being separate. The price for printing was about
four cents a copy. When the cuts were finished, proofs of them

were submitted to the defendant, who approved them. The plaintiff then delivered the cuts to a third person with whom he had contracted for the printing. He ordered printed eighty copies in excess of the five thousand for the defendant, intending at the time of contracting to use the dies for the purpose of printing these extra copies for himself, and quoting a lower price in order to get these extra copies for himself; but he did not at that time, nor at any time before the alleged conversion, inform the defendant of this intention, nor secure permission from him to use the cuts for this purpose. He intended to use these sample copies for the purpose of advertising his own business, (cutting them up so that one or two illustrations should be used as samples,) and sending them with other advertising matter to marble dealers throughout the United States, and also to use them in soliciting trade, showing them as samples of the kind of work he did. By mistake at the bindery, the whole five thousand and eighty copies were delivered to the defendant; but the plaintiff immediately notified the defendant of this fact, and requested him to deliver possession of the eighty copies to the plaintiff's agent. This the defendant refused to do, but used these pamphlets as he did the others, sending them out through the mails to retail marble dealers throughout the country. Subsequently he offered to pay the plaintiff for the eighty copies at the same rate at which he paid for the five thousand, and before this action was brought, the defendant's attorney tendered to the plaintiff's attorney five dollars as payment for the eighty copies. This tender was refused.

The plaintiff requested the judge to rule as follows: " 1. The rule of damages in this case is not, as in ordinary cases, the fair market value of the goods converted, but the plaintiff is entitled to recover their value to him. 2. In this case there was no contract, express or implied, between the plaintiff and the defendant, that the plaintiff should not print and use copies of the cuts made on the defendant's order, for his own advertising purposes. 3. The ownership of the plaintiff in the property converted by the defendant was rightful, and the plaintiff was entitled to make such use of it as he desired."

The defendant requested the judge to rule as follows: " 1. On all the evidence the plaintiff is not entitled to recover. 2. In

no event can the plaintiff recover more than nominal damages. 3. In no event can the plaintiff recover more than a fair market value of the property converted."

The judge submitted issues to the jury, which, with the answers returned, were as follows:

"1. Is the plaintiff entitled to hold the defendant for a conversion of the pamphlets? *A.* Yes. — 2. What was the value of the pamphlets to the plaintiff, irrespective of any special value for advertising or other purposes? *A.* $5.00. — 3. What was the total value of these pamphlets to the plaintiff, including with the value as found in answer to the second interrogatory, also any special value which these pamphlets had to the plaintiff? *A.* $71.25."

The defendant admitted that if, on the facts above stated, the plaintiff was the owner of the eighty pamphlets sued for, and was also entitled to their possession, the evidence showed a conversion; whereupon the judge ruled that 'the plaintiff was so entitled, to which ruling the defendant excepted; and the judge instructed the jury to answer the first interrogatory in the affirmative.

After the jury had returned their answers to these interrogatories, the plaintiff not contending that the pamphlets had any other special value to him than their value for advertising purposes, the judge ordered the jury to return a general verdict for the plaintiff in the sum of $5.

To the rulings and refusals to rule, so far as inconsistent with the requests made, both the plaintiff and the defendant excepted. If, on the facts stated, the plaintiff had no right of possession, judgment was to be entered for the defendant. If the first request of the plaintiff should have been given, judgment was to be entered for the plaintiff for $71.25; otherwise, judgment was to be entered on the verdict as rendered.

*G. W. Anderson*, for the plaintiff.

*E. K. Hall*, for the defendant.

BARKER, J. Upon the facts stated in the report there should have been judgment for the defendant.

The contract for making the dies and the contract for manufacturing five thousand folders by printing impressions from the dies were separate. The fact that the dies never had been in

the actual possession of the defendant is immaterial to the present question. They were representations of the defendant's own monuments, made from drawings or photographs furnished by himself. The plaintiff had no right to use the dies. to have impressions of them printed for his own use, and his use of them in having eighty extra copies of the folder struck off for himself, for the purpose of advertising his own business of making dies, was a breach of trust toward the defendant, which would have entitled the latter to have, at least if the matter were of sufficient consequence, an injunction to restrain the plaintiff from using the folders thus wrongfully obtained, and to a decree ordering them to be destroyed. *Morison* v. *Moat*, 9 Hare, 241. *Prince Albert* v. *Strange*, 2 DeG. & Sm. 652; 1 MacN. & G. 25. *Tuck* v. *Priester*, 19 Q. B. D. 629. *Pollard* v. *Photographic Co.* 40 Ch. D. 345.

Assuming, without so deciding, that title to eighty of the folders as between the printer and the plaintiff passed to the plaintiff before or at the time when the five thousand and eighty folders were delivered to the defendant, he still cannot recover in this action, because by his own fraudulent act in procuring them to be made for his own use, in breach of the trust reposed in him by the defendant to make no such use of the dies, the plaintiff has caused the eighty folders to be so mixed and confused with the defendant's goods that they cannot be distinguished, and the plaintiff cannot require the defendant to separate the eighty folders from his own, or to pay the plaintiff for their value. They were not ear-marked and there was no way to distinguish them, and the confusion of them with the other five thousand was due to the plaintiff's attempt to defraud the defendant. *Ryder* v. *Hathaway*, 21 Pick. 298, 304. See *Willard* v. *Rice*, 11 Met. 493; *Smith* v. *Sanborn*, 6 Gray, 134; *Stearns* v. *Herrick*, 132 Mass. 114; *Moors* v. *Reading*, 167 Mass. 322, 326.

> *Judgment to be entered for the defendant, notwithstanding the verdict.*