CHARLES E. JONES *vs.* EDWARD G. SHATTUCK.

Suffolk.　November 23, 1899. — March 2, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Personal Injuries — Collision between Bicycle and Carriage — Evidence — Due Care — Negligence — Instructions.*

A person who, after an accident caused by a collision between a bicycle and a horse and carriage, injuring the rider of the bicycle, followed the occupant of the carriage as he drove rapidly away, may testify, in an action against the latter for the injury, that when he overtook the defendant he told him that he was sent to see who he was, and the defendant refused to give his name; and the witness may testify also that the defendant drove away and did not turn back until requested so to do by him, although this is denied by the defendant.

In an action for personal injuries caused by a collision between a bicycle ridden by the plaintiff and a horse and carriage driven by the defendant, the plaintiff having passed A.'s team going in the same direction before the collision, and the evidence upon the question whether the plaintiff or the defendant was complying with the rule of the road, and as to the speed at which the defendant was driving, being conflicting, the defendant is not entitled to have the jury instructed that "if the plaintiff came round from behind A.'s team and the defendant had not the opportunity to perceive the plaintiff until it was too late to stop or change the direction of the defendant's horse, the defendant would not be liable."

At the trial of an action for personal injuries caused by a collision between a bicycle ridden by the plaintiff and a horse and carriage driven by the defendant, the request for a ruling that "if the plaintiff was travelling on his wheel at a

rate faster than seven miles an hour just before and up to the instant of the accident, and that was .one of the causes of the accident, he was not in the exercise of due care," is in conflict with St. 1894, c. 479, and is rightly refused.

TORT, for personal injuries caused by a collision between a bicycle ridden by the plaintiff and a horse and carriage driven by the defendant on Commonwealth Avenue in Boston, through the alleged negligence of the defendant. At the trial in the Superior Court, before *Blodgett*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

*J. M. Hall*, for the defendant.

*J. F. Cronan*, for the plaintiff.

LORING, J. The plaintiff's evidence tended to prove that at about six o'clock of the afternoon in question he was riding on his bicycle from Boston to Brookline; that he rode down Commonwealth Avenue, in Boston, on the right-hand side of the left hand of the two driveways which run one on each side of the park making the centre of that avenue, until he came to the point where the two driveways meet and the park or centre ends; that he then continued in the same direction, across the open square made by the intersection of Beacon Street, Commonwealth Avenue, and Brookline Avenue; that he was riding at the rate of five or six miles an hour; that as· he reached a point about sixty feet away from a watering-trough in front of the apex of the triangle formed by Beacon Street and Brookline Avenue, he passed a team going out over Beacon Street toward the watering-trough, and getting by the team he saw the defendant's wagon one hundred and seventy-five to two hundred and twenty-five feet away from him, with nothing to obstruct the view between the two; that· the defendant was driving towards him and did not turn out to avoid him; that when he was ten or eleven feet away from the defendant's team, he turned his wheel sharply to the right to avoid a collision and came in contact with the left-hand shaft of the team; and that the defendant was on the wrong side of the road and was driving at the rate of ten or twelve miles an hour.

The defendant's evidence tended to show that he was driving from the direction of Brighton on the northerly driveway of Commonwealth Avenue, at the rate of about four miles an hour;

that the plaintiff suddenly swung round in front of a team cross-ing Commonwealth Avenue on Beacon Street, going toward the watering-trough, and struck the fore shoulder and fore leg of his horse; that the plaintiff came so suddenly from behind and around this team that he could not stop his horse in time to pre-vent a collision; that he was on the proper side of the road and that the plaintiff was on the wrong side of the road; that his horse was frightened and ran; that he got him under control and returned voluntarily to the point where the accident oc-curred; and that when he arrived there, the plaintiff had been taken away in a coupé.

One of the plaintiff's witnesses testified that " after the plain-tiff was struck, the defendant drove rapidly away." Afterwards, one Mauer, another of the plaintiff's witnesses, testified: " I was on my bicycle going towards Brighton, on the right-hand side of the road; I heard the sound of a carriage coming along fast; the carriage was coming along very fast; I saw the boy lying in the street; I turned around and followed the carriage. . . . I told the defendant they wanted him back there; he said, ' What for?' I said some one was run over, and the defendant turned and went back; later he went away again and I followed him to the stable in Pembroke Street and saw him get out of the carriage. . . . I told him we were sent to see who he was. He called me in. I gave him my name and address and asked him his, and he said, ' Never mind my name.' " On cross-exam-ination, the same witness stated: " When the defendant in the carriage drove back to the scene of the accident, the coupé into which the plaintiff had been put had just started off, and the plaintiff was gone; that the defendant then turned and drove towards the stable and I followed him." Another witness sub-sequently testified: " I saw the vehicle going away at a rapid rate; I did not see the occupant of the carriage, saw no whip used and heard nothing said to the horse."

1. The defendant's first exception is to the admission of Mauer's testimony. The refusal of the defendant to give his name to Mauer, who said, " We were sent to see who he was," might reasonably be considered by the jury to be an act indicat-ing that the defendant did not wish his name known and was endeavoring to hide it from the plaintiff. The defendant's coun-

sel argues that the defendant was under no obligation to give Mauer an answer, because Mauer's action in following the defendant and demanding his name was entirely gratuitous, and, in fact, he had not been sent. But this was not known to the defendant at that time, and it is his refusal to give his name under the circumstances then appearing which is significant; we think the testimony was competent. We also think it was competent for Mauer to testify that the defendant drove away and did not turn back until requested so to do by him, though this was denied by the defendant. It was for the jury to determine whether they believed Mauer or the defendant on that point.

2. The defendant requested the court to instruct the jury: "First. If the plaintiff came round from behind McGovern's team, and the defendant had not the opportunity to perceive the plaintiff until it was too late to stop or change the direction of the defendant's horse, the defendant would not be liable." The defendant contended that the rule of the road applied to the locus where the accident happened. This instruction was deficient if, as the defendant contended, the rule of the road applied to the case; it was deficient because it omitted from the case the question whether the defendant or the plaintiff was complying with the rule of the road; on this point the evidence was conflicting; it was also deficient in not instructing the jury what consideration should be given by them to the speed at which the defendant was driving, on which point, also, the evidence was conflicting; if the jury believed that the defendant was driving at the rate of ten or twelve miles an hour, the facts stated in this ruling would not have been, as matter of law, a defence; *Purtell* v. *Jordan*, 156 Mass. 573; that fact would have taken the case out of the rule laid down in *Messenger* v. *Dennie*, 137 Mass. 197, and the other cases relied on by the defendant in this connection. The principle of this request, so far as it was applicable to the case, was adopted by the presiding justice, and instructions fully covering the facts of the case were given. The judge was not bound to tell the jury that certain facts would or would not constitute negligence apart from other facts already testified to. *Ellis* v. *Lynn & Boston Railroad*, 160 Mass. 341.

3. The ruling requested by the defendant, "Third. If the plaintiff was travelling on his wheel at a rate faster than seven

miles an hour just before and up to the instant of the accident, and that was one of the causes of the accident, he was not in the exercise of due care," is in conflict with the St. 1894, c. 479, and was rightly refused.

4. There was evidence of negligence on the part of the defendant and of due care on the part of the plaintiff, and therefore the fourth, fifth, and sixth requests for rulings were rightly refused.*    *Exceptions overruled.*

---

* These requests were as follows: " 4. There is no evidence of the negligence of the defendant.    5. The plaintiff was not in the exercise of due care and cannot recover.    6. The plaintiff is not entitled to recover."