KLUG, Appellant, vs. SHERIFFS, Respondent.

*October 9—November 7, 1906.*

*Contracts: Painting of portrait from photographs of deceased per-*
*son: Breach of trust: Unauthorized painting of second portrait:*
*Property right therein: Rights of privacy.*

1. Pursuant to a contract with defendant to paint a portrait of his
   deceased wife, plaintiff was furnished with two photographs of
   her to aid him in the work.  He painted a portrait from one of
   them as agreed, and was paid therefor.  Without authority he
   also painted a portrait from the other photograph, and at de-
   fendant's request took it to his house, whereupon defendant
   retained the second portrait and refused to pay for it.  *Held,*
   that the use of the photographs to paint the second portrait was
   a violation of the contract and a breach of trust and confidence;
   that plaintiff acquired no property right in such portrait; and
   that defendant's retention of it did not make him liable as a
   purchaser.  DODGE, J., dissents.
[2. Whether the painting of the second portrait was an invasion of
   any "right of privacy," not determined.]

APPEAL from a judgment of the superior court of Milwau-
kee county: J. C. LUDWIG, Judge.  *Affirmed.*

This is an appeal from a judgment of the circuit court for
Milwaukee county dismissing the plaintiff's complaint.  The
plaintiff, an artist, contracted with defendant to paint a por-
trait of his deceased wife, and for such purpose, at plaintiff's
request, defendant furnished two photographs, one taken in-
doors, and the other, a group photograph, taken out-of-doors,
in which she appeared with others.  The photographs were
furnished for the purpose of aiding plaintiff in the work.  It
was agreed between plaintiff and defendant that a portrait
should be painted from the "outing" photograph for $175,
which was done and the portrait delivered and paid for.  A
few days after defendant received the portrait plaintiff wrote
him that, without any direction, he had painted a portrait of
his deceased wife from the "indoor" photograph, and asked
whether defendant desired to see it.  Defendant, by letter,

requested that the second portrait be brought to his house, which was done. The painting was never returned or paid for. This action was brought to recover for goods sold and delivered of the alleged value of $190. The case was tried by the court without a jury, and the court found:

"That, without any authority, contract, or permission from said defendant, said plaintiff painted and prepared a second portrait of defendant's deceased wife from the aforesaid photographs, while the same were still in his possession. That after said plaintiff had delivered the first portrait to said defendant and had received the agreed price therefor, he, the said plaintiff, notified said defendant that he had painted a second portrait of defendant's deceased wife from said photographs, and inquired whether said defendant desired to see said second portrait, to which inquiry said defendant replied, and instructed said plaintiff to bring said second portrait to his house; and, in response to said suggestion so made by said defendant, the plaintiff brought said second portrait to the house of defendant, and upon inquiry as to the price of said second portrait stated that the same would be one hundred and seventy-five ($175) dollars, which price said defendant refused to pay him therefor, and also refused to surrender to him, the said plaintiff, the said portrait, for the reason that said plaintiff had received no instruction, authority, or direction to paint same, and the defendant then and there offered to destroy said portrait, which said plaintiff refused to have done. That at the time of the delivery of said portrait as aforesaid, said defendant offered to have the picture removed from the frame which said plaintiff had placed thereon; and, prior to the commencement of this action, the defendant offered and tendered to said plaintiff the frame in which said picture was set, and the plaintiff refused same and still refuses same. That said defendant has ever since said day held himself in position and has been ready and willing to return said frame, but said plaintiff refused, and still refuses, to receive the same. That said plaintiff had no authority to paint said second portrait from the photographs in his possession, thus received for the purpose of painting said first portrait, and that the doing of the same was a breach of faith on the part of said plaintiff, and he acquired no property rights or interest in said picture by reason thereof."

Judgment dismissing the plaintiff's complaint, with costs, was ordered, from which this appeal was taken.

*A. C. Umbreit,* for the appellant.

*J. W. Wegner,* for the respondent.

Kerwin, J. The facts in this case are substantially undisputed, and the questions of law are: (1) Whether the painting of the second portrait was an invasion of the so-called "right of privacy;" and (2) whether the painting of the second portrait was a breach of trust, contract, or confidence, and whether the plaintiff acquired any property in the second portrait.

1. Upon the first proposition, as regards the right of privacy, the authorities seem to leave the question in some uncertainty as to the extent to which courts will go in enforcing the right. In *Atkinson v. Doherty & Co.* 121 Mich. 372, 80 N. W. 285, it was held that equity will not restrain the use of the name and likeness of a deceased person as a label for a brand of cigars named after him, though offensive to the family of the deceased, so long as it does not amount to a libel. In *Schuyler v. Curtis,* 147 N. Y. 434, 42 N. E. 22, it was held that the individual right of privacy, which any person has during life, dies with the person, and any right of privacy which survives is a right pertaining to the living only. In this case the plaintiff brought an action to restrain defendants from making a statue or bust of deceased, Mrs. Schuyler, or from receiving subscriptions for the purpose of defraying the cost of making the same, and also restraining them from using the name of Mrs. Schuyler or circulating any description of her in connection with the "Woman's Memorial Fund Association." The action was brought by relatives of Mrs. Schuyler, and it was held that the action could not be maintained, it appearing that the motive of the parties interested in erecting a bust was to do honor to the memory of the deceased. Again, the question was considered by the court of appeals of New York in *Roberson v. Rochester F. B. Co.* 171

N. Y. 538, 64 N. E. 442, Chief Justice PARKER writing the opinion, in which he reaches the conclusion, substantially:·

"An individual's so-called right of privacy, founded upon the claim that he has the right to pass through this world, if he wills, without having his picture published, his business enterprises discussed, his successful experiments written up for the benefit of others, or his eccentricities commented upon either in handbills, circulars, catalogues, periodicals, or newspapers, and, necessarily, that the things which may not be written and published of him must not be spoken of him by his neighbors, whether the comment be favorable or otherwise, does not exist in the law, and is not enforceable in equity. . . . An injunction cannot be granted to restrain the unauthorized publication and distribution of lithographic prints, or copies, of a photograph of a young woman as part of an advertisement of a legitimate manufactured article, where there is no allegation that the picture is libelous in any respect; but, on the contrary, the *gravamen* of the complaint is that the likeness is so good that it is easily recognized, and that it has been and is used to attract attention to the advertisement upon which it is placed, although the publication has caused her great mental and physical distress, necessitating the employment and attendance of a physician."

There is, however, in each of these cases a vigorous dissenting opinion by Justice GRAY. In the late case of *Pavesich v. New England L. Ins. Co.* 122 Ga. 190, 50 S. E. 68, the supreme court of Georgia approves the doctrine laid down in the dissenting opinion of Justice GRAY in the New York cases, and, in a very able and exhaustive opinion reviewing the cases, holds that the right of privacy is a form of property as much as the right of immunity of one's person. Most of the leading cases are collected and discussed in this case. In the opinion the court quotes approvingly the ·following language from the dissenting opinion of Justice GRAY in *Roberson v. Rochester F. B. Co., supra:*

"The right of privacy, or the right of the individual to be let alone, is a personal right, which is not without judicial recognition. It is the complement of the right to the immunity of one's person. The individual has always been entitled to

be protected in the exclusive use and enjoyment of that which is his own. The common law regarded his person and property as inviolate, and he has the absolute right to be let alone. Cooley, Torts, 29. The principle is fundamental and essential in organized society that every one, in exercising a personal right, and in the use of his property, shall respect the rights and properties of others. He must so conduct himself, in the enjoyment of the rights and privileges which belong to him as a member of society, as that he shall prejudice no one in the possession and enjoyment of those which are exclusively his. When, as here, there is an alleged invasion of some personal right or privilege, the absence of exact precedent, and the fact that early commentators upon the common law have no discussion upon the subject, are of no material importance in awarding equitable relief. That the exercise of the preventive power of a court of equity is demanded in a novel case is not a fatal objection."

It will be seen, however, upon examination of the cases cited as sustaining the so-called right of privacy, that many of them turn upon property rights or breach of trust, contract, or confidence. *Levyeau v. Clements,* 175 Mass. 376, 56 N. E. 735; *Morison v. Moat,* 9 Hare, 241; *Prince Albert v. Strange,* 2 De G. & S. 652; *Tuck & Sons v. Priester,* L. R. 19 Q. B. D. 629; *Pollard v. Photographic Co.* L. R. 40 Ch. D. 345; *Gee v. Prichard,* 2 Swanst. 402; *Woolsey v. Judd,* 4 Duer, 379. See, also, 4 Harv. Law Rev. 193, and 3 N. W. Law Rev. 1; *Corliss v. E. W. Walker Co.* 57 Fed. 434, 64 Fed. 280.

2. We think the case before us does not turn upon the so-called "right of privacy," but upon contract relations. The plaintiff seeks to recover at law for the alleged value of the picture, upon the ground that he had a property right in it and that the defendant, by retaining it, became liable as a purchaser. The complaint is to recover for goods, wares, and merchandise sold and delivered to the defendant. The plaintiff, under a contract to paint the portrait, received the two photographs for the purpose of aiding him in the painting of

the original picture, which he painted and was paid for in accordance with the contract. He then undertook, without any authority from the defendant, to paint the second portrait; and, as he says in his letter to defendant, "decided to risk having one painted, which I should be pleased to have you see, either at your home or mine, as it suits your convenience." There is no claim that plaintiff ever had authority to paint the second portrait or that defendant ever assented thereto. Under the contract plaintiff had no right to hold the photographs or use them for any other purpose than to aid him in painting the original picture. No express authority to use them for any other purpose was given, and none can be implied from the nature of the engagement. When the original picture was painted plaintiff's contract with defendant was performed, and he had no right to retain the photographs for any other purpose. When he undertook to produce another picture from the indoor photograph he violated his contract with defendant, and such act amounted to a breach of the trust reposed in him under the contract relation existing between them.

In *Levyeau v. Clements,* 175 Mass. 376, 56 N. E. 735, defendant contracted with plaintiff for a certain number of cuts from defendant's dies to be used by defendant in his business. The plaintiff, in addition to the number of cuts contracted for by defendant, printed a certain number extra for his own use without the knowledge of defendant. By mistake the extra cuts or folders were delivered, with the others, to defendant, which was immediately discovered, and demand made upon defendant for them, which was refused. Defendant kept the extra cuts not ordered, and used them the same as the others. In an action of trover the lower court ruled plaintiff could recover, and the judgment was reversed upon appeal. The court said (175 Mass. 379, 56 N. E. 736):

"The plaintiff had no right to use the dies to have impressions of them printed for his own use, and his use of them

in having eighty extra copies of the folder struck off for himself, for the purpose of advertising his own business of making dies, was a breach of trust toward the defendant, which would have entitled the latter to have, at least if the matter were of sufficient consequence, an injunction to restrain the plaintiff from using the folders thus wrongfully obtained, and to a decree ordering them to be destroyed."

In *Tuck & Sons v. Priester,* L. R. 19 Q. B. D. 629, the plaintiffs employed defendant, who was a printer in Berlin, to make for them copies of a drawing. Defendant made the copies ordered, and also, without the knowledge or consent of plaintiffs, made other copies and imported them to England. It was held that there was an implied contract that defendant should not make any copies of the drawing other than those ordered by plaintiffs, and that plaintiffs were entitled to an injunction and damages by reason of the defendant's breach of contract. · In *Pollard v. Photographic Co.* L. R. 40 Ch. D. 345, a photographer who had taken a negative likeness under agreement to supply the person with copies was restrained from selling or exhibiting copies, on the ground that there was an implied contract not to use the negative for such purpose; and, further, because such sale or exhibition was a breach of confidence. In *Prince Albert v. Strange,* 2 De G. & S. 652, it was held that, where a workman intrusted with copperplates for the purpose of taking impressions for the plaintiff of etchings made by the latter, and not intended for publication, took impressions for himself, in violation of the trust, and sold the impressions to the defendant, who published a catalogue of them, accompanied by remarks of his own, the plaintiff was entitled at the hearing to a perpetual injunction to restrain the publication of the catalogue and to a decree ordering the impressions to be destroyed.

We think the doctrine of the above cases rules the case before us, and that plaintiff had no right to paint the second picture or use the photographs for such purpose. The plaintiff, being guilty of a breach of contract and of trust and con-

fidence as well in painting the second portrait, could acquire no property in it, and therefore had none to sell to defendant or any one else.

It follows that the plaintiff was not entitled to recover.

*By the Court.*—The judgment of the court below is affirmed.

Dodge, J. (*dissenting*). No rule is more elementary than that one who knowingly accepts and avails himself of services performed by another is bound by implied promise to pay for such services although neither requested nor authorized in advance. *Wheeler v. Hall,* 41 Wis. 447, 451; *Wellauer v. Fellows,* 48 Wis. 105, 4 N. W. 114; *Goodland v. Le Clair,* 78 Wis. 176, 47 N. W. 268; *Williams v. Williams,* 114 Wis. 79, 84, 89 N. W. 835; *Manitowoc S. B. Co. v. Manitowoc G. Co.* 120 Wis. 1, 8, 97 N. W. 515; *Indiana Mfg. Co. v. Hayes,* 155 Pa. St. 160, 26 Atl. 6; *Bartholomae & Co. v. Paull,* 18 W. Va. 771; *Ford v. Ward,* 26 Ark. 363; *Abbot v. Hermon,* 7 Me. 118. Here the plaintiff painted the picture in question knowing that defendant would not thereby be placed under any liability, but would have the right after its completion to avail himself of the service or reject it. At defendant's request it was placed in his possession to enable him to decide whether he would reject or would accept it, with complete understanding that plaintiff expected payment in the latter event. Defendant has retained it. He cannot now be heard to say that he did not expect to pay for it. His acts give him full benefit of plaintiff's work and he should not, by his own testimony to a mental state of disapproval, be permitted to deny the legal effect of such acts. He could have refused or surrendered the picture, if dissatisfied, with no prejudice to any so-called rights of privacy as they existed before plaintiff, at defendant's request, put it in the latter's possession.

The cases cited in the court's opinion (*Levyeau v. Clements, Tuck & Sons v. Priester, Pollard v. Photographic Co.,*

and *Prince Albert v. Strange*) clearly have no relevancy. In them the plaintiff was attempting to acquire advantage to himself in breach of the understanding under which he had acquired an opportunity to do so. His motive was bad; approximately fraudulent. Here, on the contrary, plaintiff was attempting to confer a benefit upon defendant; in good faith believing that the latter's desire for a picture of his deceased wife would be best satisfied by the service rendered and tendered for acceptance or rejection by the latter. I think plaintiff is entitled upon the facts to recover the reasonable value of the benefit conferred on defendant, and therefore must dissent from the court's decision.

I fear that the marked prominence given to quotation from a dissenting opinion in *Roberson v. Rochester F. B. Co.* 171 N. Y. 538, 64 N. E. 442, may suggest approval of the views quoted as to existence of any legal right of privacy. I certainly am not prepared to yield concurrence therewith, nor did I understand that the court in any degree adopted them, but, on the contrary, decided to express no opinion on that important and vexed subject.