43182.   McQUEEN v. WILSON et al.

ARGUED NOVEMBER 9, 1967—DECIDED MARCH 8, 1968—
REHEARING DENIED MARCH 28, 1968-

Samuel D. Hewlett, L. Paul Cobb, Jr., for appellant.

LeRoy C. Hobbs, Ben J. Camp, Cleburne E. Gregory, Jr., Arnall, Golden & Gregory, Carpenter & Karp, for appellees.

DEEN, Judge. ■ On June 27, 1967, a judge of the Civil Court of Fulton County sustained the general demurrer of each of the defendants and dismissed the case. At the same term of court plaintiff filed a motion to reconsider with rule nisi, which was signed by the judge and by its terms acted as a supersedeas until further order of the court. Thereafter on July 26 the court entered another order sustaining the general demurrers of each defendant and also a special demurrer of each contending that there was a misjoinder of parties defendant. A motion to dismiss the appeal has been filed in this court on the ground that the order of June 27, which is contended to be the final judgment dismissing the case was not appealed from within 30 days. This court is of the opinion that the case of LeCraw v. L. P. D., Inc., 114 Ga. App. 281 (150 SE2d 927) and like cases are not controlling where in analogous situations motions for reconsideration were filed, for the reason that here the grant of the supersedeas tolled time for filing an appeal. Where during the same term a motion to set aside the judgment is entertained,

the order thereon is the final appealable judgment in the case. *Pazol v. Citizens Nat. Bank of Sandy Springs*, 112 Ga. App. 161 (144 SE2d 117). The motion is denied.

■ The Civil Court of Fulton County has no jurisdiction over direct or indirect injuries to the person or reputation. *Cantrell v. Davis*, 176 Ga. 745 (169 SE 38); *Funk v. Baldwin*, 80 Ga. App. 177 (55 SE2d 733). The definition of the right of privacy as the term was used in *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (5) (50 SE 68, 69 LRA 101, 106 ASR 104, 2 AC 561) and as it is generally considered in the cases dealing with the subject, is one that deals with the person as a *person*, his mental proclivities and emotional reactions. "It is, simply stated, the right to be let alone; to live one's life as one chooses, free from assault, intrusion or invasion except as they can be justified by the clear needs of community living under a government of law." Fortas, J., dissenting in Time, Inc. v. Hill, 385 U.S. 374, 413 (87 SC 534, 17 LE2d 456). So considered, as stated in Reed v. Real Detective Pub. Co., 63 Ariz. 294, 304 (162 P2d 133): "it is an incident of the person, and not of property. It is a personal action which does not survive the death of the injured party. It does not exist if there has been consent to publication, or where the plaintiff has become a public character, and thereby waived his right to privacy, nor in the ordinary dissemination of news and events, nor in connection with the life of a person in whom the public has a rightful interest, nor where the information would be of public benefit." It is clear that Count 2 of the petition in this case is based on an invasion of the plaintiff's privacy in this traditional sense. The general demurrer to this count was correctly sustained both on the theory that the Civil Court of Fulton County has no jurisdiction over injuries to the person, feelings and sensibilities, and on the ground that as to this phase of the right of privacy the plaintiff clearly, by acting in the home movie, was seeking exactly the kind of publicity which she obtained, that is, an extension of her public image as Prissie in the movie Gone With the Wind. Once consenting to the use of one's name in a given situation waives one's right to privacy in that area. *Tanner-Brice Co. v. Sims*, 174 Ga. 13 (4), 21 (161 SE 819). The plain-

tiff's consent was to the use of her name, photograph and image in the very manner in which it was used (a movie identifying her as Prissie) although she did not consent to the making and sale. of the otherwise correct reproductions of this film on post-cards, slides, and leaflet illustrations. *Pavesich* and its offspring afforded no precedent which would shield Count 2 from the demurrers interposed.

■ As to Count 1 a different principle obtains. Both before and since *Pavesich* it has been recognized that the appropriation of another's identity, picture, papers, name or signature without consent and for financial gain might be a tort for which an action would lie on the theory that it constitutes an invasion of a property right. As an early example, it is pointed out in Cason v. Baskin, 155 Fla. 198, 209 (20 S2d 243, 168 ALR 430), that in the case of Prince Albert v. Strange, 64 Eng. Reprint 293, aff. 41 Eng. Rep. 1171 "the English judge instructed the jury that the unauthorized publication of etchings made by the Queen and Prince Consort for their own private amusement amounted to an invasion of their privacy, but the Court saw fit to base its decision upon the nominal right of property." In 1906 it was observed in Klug v. Sheriffs, 129 Wis. 468, 472 (109 NW 656): "It will be seen, however, upon examination of the cases cited as sustaining the so-called 'right of privacy' that many of them turn upon property rights or breach of trust, contract or confidence." In U. S. Life Ins. Co. v. Hamilton (Tex. Civ. App.) 238 SW2d 289, 292, a former employer of the plaintiff continued to send out letters over his signature as manager after his employment had terminated, and the court held: "The use of an individual's signature for business purposes unquestionably constitutes the exercise of a valuable right of property in the broadest sense of that term. . . In this broad sense, we have no doubt that the unauthorized use of appellee's name and signature by appellants, regardless of why it was so used, constituted such wrongful conduct on their part as to entitle appellee to the recovery of nominal damages, even though no actual damages were shown." But when we hold that the unauthorized reproduction and sale of. the plaintiff's pictures for the financial gain of the defendant is an actionable tort inde-

pendent of elements of injury to the person, we have direct authority in *Cabaniss v. Hipsley*, 114 Ga. App. 367 (4) (151 SE2d 496). Both cases deal with a performer whose livelihood depends to some extent on the public image created by her efforts and talent—there, an exotic dancer; here, an actress in a well known movie. Both plaintiffs have packaged their personality within the area of performance as a commodity for sale to the public, and it can no more be tolerated that another take this commodity developed and marketed by the plaintiff for private gain than that her dress or automobile be misappropriated in like manner. "The main distinction between this aspect of privacy and the other three is the distinction between causes of action involving injury to feelings, sensibilities or reputation and those involving an appropriation of rights in the nature of *property rights* for commercial exploitation." (Emphasis supplied.) *Cabaniss*, supra, at p. 377. This case also points out that the measure of damages is the advertising value of the use of the material in the manner and for the time it was appropriated, but failure to state a correct measure of damages subjects the petition to special rather than general demurrer. It was error to dismiss the petition without allowing the plaintiff opportunity to amend, since a cause of action for at least nominal damages is set out as against the general demurrer interposed.

■ The special demurrers on the ground of misjoinder of parties defendant was properly sustained under the old pleading Act in effect when the demurrers were filed. It appears that the plaintiff's agreement was with Wilson and Stone Mountain Plantation, Inc. So far as the petition shows, Atlanta News Agency, Inc., knew nothing of the agreement nor did it participate in making the movie. It did make and sell postcards and perhaps the Souvenir Book of Stone Mountain, in which latter pictures of Butterfly McQueen as Prissie of Gone With the Wind were used. These had to be obtained from the other two defendants, who apparently had title to the movie film. No concert of action is alleged. Wilson and Stone Mountain Plantation, Inc., may or may not be responsible for any damages accruing to the plaintiff by reason of the sale of the pictures by Atlanta News Agency, Inc., but it is hard to see how

the converse could be true under the skimpy facts alleged. In any event, we are here following the old rule of construction against the pleader.

The trial court did not err in sustaining the special demurrers of the defendants or in sustaining the general demurrers to Count 2 of the petition. It was error to dismiss Count 1 without allowing the plaintiff an opportunity to amend.

*Judgment affirmed in part; reversed in part. Felton, C. J., Bell, P. J., Jordan, P. J., Hall, Eberhardt and Quillian, JJ., concur. Whitman, J., concurs specially. Pannell, J., dissents.*

WHITMAN, Judge, concurring specially. I concur in the majority opinion by Judge Deen in this case except as hereinafter stated, and in the judgment of affirmance in part and reversal in part. I agree that it was error on the part of the trial court in sustaining the general demurrer to and in dismissing Count 1 of the petition, quite without regard to allowing in the order sustaining the general demurrer to Count 1 an opportunity for plaintiff to amend. Count 1 of plaintiff's petition in its ad damnum allegation and prayer only sought a recovery for general damages and this was sufficient to authorize a recovery of general damages, nominal damages and punitive damages as the evidence on the trial of the case might show. *Hall v. Browning,* 195 Ga. 423, 429 (24 SE2d 392); *Horwitz v. Teague,* 77 Ga. App. 386, 389 (48 SE2d 697).

Count 1 of plaintiff's petition is as held in the majority opinion predicated in tort upon an alleged wrongful invasion of a property right for which at least nominal damages are recoverable. *Williams v. Harris,* 207 Ga. 576, 579 (63 SE2d 386); *Weimer v. Cauble,* 214 Ga. 634, 636 (106 SE2d 781).

It is my view further that plaintiff would have the right to amend Count 1 of her petition by seeking to recover special damages, if any, and according to the true measure thereof, as permitted and provided by law.

PANNELL, Judge, dissenting. I concur in the result reached in Division 1 of the opinion, that is, that this court has jurisdiction of the appeal, but based solely on the order of July 26, 1967, and not upon the order of June 27, 1967. It is also my opinion an enumeration of error on the June order dismissing

the case on general demurrer cannot be considered on the appeal from the July order for the reason that the June order, appealed from too late, is the law of the case, and I, therefore, dissent from the rulings of the court reversing the rulings of the trial judge contained therein.

A statement of facts so that the procedural questions may be better understood may be in order. The trial judge, by order dated June 27 (entered June 28), 1967, sustained separate general demurrers filed by each of three defendants to Count 1 and Count 2 of the petition, and dismissed the petition. No ruling was made on the special demurrers. Subsequently, on June 30, 1967, plaintiff presented the following motion to the court:

"Comes now plaintiff, Butterfly McQueen, and within the term that defendants' general demurrers were sustained, and moves the court to reconsider the ruling and order entered June 27, 1967, in said case. Wherefore, plaintiff prays that this her motion for reconsideration be allowed and that the court set a day certain for hearing on the said motion and that the order entered June 27, 1967 be stayed until after such hearing."

The trial judge issued a rule nisi on said motion setting the matter for a hearing on July 26, 1967 and also provided:

"Let this order be a supersedeas to the order entered June 27, 1967 sustaining defendants' general demurrers and dismissing the petition, until further order of this court."

On July 26, 1967, the day set in the rule nisi, but after the term expired, the court entered the following order:

"Order on Motion for Reconsideration. The within case coming on regularly for hearing before me on plaintiff's motion for reconsideration filed June 30, 1967, and after hearing argument and upon consideration it is ordered

"(1) That grounds 1, 2 and 3 of the demurrer filed on behalf of the defendant, Atlanta News Agency, Inc. on December 5, 1966, same being general demurrers, be, and the same are hereby sustained.

"(2) That grounds 1 and 3 of the demurrer filed on behalf of the defendant, Clarence T. Wilson on December 20, 1966, and directed to count 1 of the petition be, and the same are hereby sustained; grounds 1 and 3 of this demurrer directed to count II of the petition are hereby sustained.

"(3) That grounds 1 and 3 of the demurrer filed on behalf of the defendant, Stone Mountain Plantation, Inc. on December 20, 1966, and directed to count I of the petition be, and the same are hereby sustained; grounds 1 and 3 of this demurrer directed to count II of the petition are hereby sustained.

"(4) It is further ordered that plaintiff's petition be dismissed."

All of the grounds referred to were the general demurrers except ground 3, which in each instance was a special demurrer to the respective counts on the ground of misjoinder of parties defendant, which had not been passed on in the order of June 27, 1967.

The notice of appeal filed on August 25, 1967, by the plaintiff so far as here pertinent, reads as follows:

"Notice is hereby given that Butterfly McQueen, the petitioner, in the above styled case, hereby appeals to the Court of Appeals of Georgia from the order and judgment signed on *June 27*, 1967 by the Honorable James E. Webb, sustaining the general and special demurrers of the defendants, and the order and judgment of *July 26*, 1967, overruling petitioner's motion for reconsideration of the order of June 27, 1967."

A motion was made to dismiss the appeal on the ground that the appeal was filed more than 30 days after the entering of the June order.

If the June order sustaining the general demurrers is the only judgment which will support an appeal, then the appeal is filed too late. However, another judgment is also appealed from, to wit, the July order which also sustained general demurrers and dismissed the petition. Either order will support an appeal, filed within proper time, under express statutory authority. Section 1 (a) 1 of the Appellate Practice Act of 1965 (*Code Ann.* § 6-701). The appeal was filed within thirty days of the entering of the July order and in my opinion sufficiently described the order by showing its date and referring to it as the order overruling the motion to reconsider.

In determining whether an appeal from this order will be entertained we are not concerned with the correctness of that order as a matter of procedure; nor are we concerned with the

fact that a prior order had been entered dismissing the same petition based upon the same demurrers. These matters have nothing to do with the jurisdiction of this court to entertain the appeal, but merely determine whether or not the case would be affirmed or could be reversed once the appeal is entertained. These questions may affect the right of the trial judge to enter the second order, but do not affect the right of the appellant to use this order to support an appeal to this court. It becomes unnecessary at this stage, when determining whether the July order will support an appeal, to decide whether the stay or supersedeas order vacated the judgment of June so as to prevent the latter judgment from being appealable or whether or not the motion to reconsider tolled the time for filing an appeal from the June order.

Once, however, we approach the merits of the enumerations of error we are confronted with the necessity of deciding some of these questions. If the June judgment were never vacated or set aside, by either the rule nisi order granting the supersedeas or the order of July, then the re-sustaining of the general demurrers by the trial judge was a mere gesture having no legal effect on the prior order of June and this prior order standing unvacated, and ineffectively appealed from, will control the case. These circumstances would therefore require an affirmance of the case even though the trial judge may have technically erred in re-adjudicating the general demurrers and may have technically erred in passing on the special demurrers. He had no jurisdiction to do so in this case as the case was terminated by the prior order of June.

*The motion to reconsider contains no prayer that the June judgment be set aside or vacated.* It therefore cannot be treated as a motion to set aside the judgment made during the term which would authorize the trial judge to enter a different order after the term ended. For this reason, the cases of *Maxwell v. Cofer,* 201 Ga. 222, 226 (39 SE2d 314), citing *Miraglia v. Bryson,* 152 Ga. 828 (2) (111 SE 655); *Pappadea v. Clifton,* 96 Ga. App. 115 (99 SE2d 455); *Tyler v. Eubanks,* 207 Ga. 46, 50 (60 SE2d 130); *Hall v. First Nat. Bank,* 87 Ga. App. 142 (73 SE2d 252); *Milam v. Busey,* 96 Ga. App. 88 (99 SE2d 325)

have no application. There is nothing in the motion to reconsider that requires this court to consider it a motion to set aside or vacate a judgment. See in this connection *LeCraw v. L. P. D., Inc.,* 114 Ga. App. 281 (150 SE2d 927), in which opinion it was held that a denial of a motion *to reconsider* a previous order of the court on general and special demurrers does not change the status of the case in the court below "until a subsequent order [is] rendered after reconsideration vacating the original judgment and entering a contrary ruling." (In the *LeCraw* case, the appeal was dismissed, while here we should entertain the appeal because the order on the motion to reconsider here again sustained the general demurrer.) We are now, however, dealing with the question of whether or not the first order was ever vacated or set aside.

*Does the order granting the supersedeas vacate the June order? Both this court and the Supreme Court have held that it does not.* I quote from *Tanner v. Wilson,* 184 Ga. 628, 633 (192 SE 425): " 'The general rule is that a supersedeas suspends all further proceedings in the suit in which the judgment superseded is rendered, such as are based upon and relate to the carrying into effect of that judgment.' *Barnett v. Strain,* 153 Ga. 43 (111 SE 574), and cit.; *West v. Gainesville Bank,* 158 Ga. 640, 641 (123 SE 870). 'Under this rule the supersedeas, during its pendency, prevents any steps to enforce or carry into effect the judgment, such as issuing an execution based thereon.' *Town of Fairburn v. Brantley,* 161 Ga. 199 (130 SE 67), citing 3 CJ 1319, § 1448. Also see *Cummings v. Clegg,* [82 Ga. 763 (9 SE 1042)], citing 9 Ga. 286 (5), and other authorities. In *Howard v. Lowell Machine Co.,* 75 Ga. 325, this court said that the general rule is that while a case is pending in this court on writ of error, further action by the court below in the case is 'coram non judice' and void. In *Huson v. Martin,* 42 Ga. 85, it was ruled that 'The judgment . . . having been, under the provisions of the law, superseded during its pendency in this court, the whole case was suspended, and the fi. fa. could not proceed at the instance of the plaintiffs in fi. fa.' In *Strickland v. Maddox,* 9 Ga. 196, it was held: 'No execution can issue . . . until the appeal is disposed of.'

So when a supersedeas is in effect (and a supersedeas is just as effective where granted by specific order of the court or where it arises by operation of law), the efficacy of a verdict or judgment is suspended. It has no retroactive effect, so as to deprive a verdict or judgment of its force and authority from the beginning, but only suspends the same thereafter and while it is effectual. Hence what is lawfully done before the supersedeas is granted or becomes effective is valid and stands, but anything done thereafter is unauthorized and must be set aside. As stated in *West v. Gainesville Bank,* [158 Ga. 640 (123 SE 870)], the supersedeas deprives the trial court 'of jurisdiction to take further proceedings towards the enforcement of the judgment excepted to.' See also *McEwen v. Kelly,* 140 Ga. 720 (5) (79 SE 777). The trial court thus loses jurisdiction to take any steps in such direction until the supersedeas is terminated, which in this case was when the judgment was affirmed by this court and the remittitur returned to the trial court and made the judgment of that court. *Town of Fairburn v. Brantley,* supra; *Knox v. State,* 113 Ga. 929, 930 (39 SE 330)."

As is shown from this excerpt the granting of the supersedeas only prevented the first judgment from being enforced. It did not vacate or set aside that judgment. That judgment was and is in full force and effect. (Parenthetically speaking it could have been the subject matter of the appeal and would have supported an appeal. The fact that a supersedeas to a judgment has been granted does not prevent an appeal therefrom where that appeal is to set aside the judgment appealed from. If this were not true then every appeal to this court would be dismissed where the appeal acted as a supersedeas from the judgment appealed from). The obiter dicta contained in the last paragraph of the opinion in *Pazol v. Citizens Nat. Bank of Sandy Springs,* 112 Ga. App. 161 (144 SE2d 117) is not in accord with the decision cited above; further, in that case it appeared that a motion to set aside the judgment appealed from was then actually pending, which was the basis for the ruling of the court.

The second order is not appealable on the theory that the motion to reconsider was a motion to set aside the first judgment,

but was an appealable order solely because it again sustained the general demurrer and dismissed the petition.

While the trial judge, in his July order, in passing on the special demurrers which he had not ruled upon in the June order may have indicated that he thought he had *legally* set aside the June order, this is not sufficient. A formal written order of the court sustaining demurrers and dismissing a petition cannot be set aside merely because we *think* the trial judge thought he *had*.

Under these circumstances, the June order, ineffectively appealed from (the appeal was filed too late from this order), is the law of the case and even though the trial judge had no jurisdiction to enter the later order to the same effect, he must be affirmed, as his error is harmless. That there may be an enumeration of error on the June order does not authorize us to reverse that ruling on the merits as that was an order finally disposing of the case unappealed from within the time required by law. The appeal from the subsequent abortive order has no effect whatsoever upon the prior ruling. The majority, however, take the position that the grant of the supersedeas tolled the time for filing an appeal from the first order. No authority is cited for this ruling, either statutory or otherwise, and such ruling is contrary to the statute, which provides only for the tolling of the time for appeal by (1) motions for new trial, (2) motions for judgment notwithstanding the verdict, and (3) motions in arrest of judgment. Section 5 of the Appellate Practice Act (Ga. L. 1965, pp. 18, 21; *Code Ann.* § 6-803). Even a motion to set aside a judgment, as the majority seem to consider the motion here, does not toll the time for filing an appeal. See *Williams v. Keebler*, 222 Ga. 437, 438 (150 SE2d 674).

When Headnote 1 and the respective division of the opinion are considered together, there seems to be some confusion in the majority holding. Headnote 1 rules that the appeal from the last order was a sufficient basis for ruling on the first order; yet in the opinion their final conclusion is that the appeal is supported by the first order because the time for appealing therefrom was tolled.

It is my opinion that the appeal here is supported only by the July order, and that the June order, ineffectively appealed from, is the law of the case. I would affirm the trial judge.