[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12387

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 24, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-00176-CV-LGW

WILLIAM ANDREW RIVELL,
ALAN B. WHITEHOUSE, individually and on
behalf of all other persons similarly situated,

Plaintiffs-Appellants,

versus

PRIVATE HEALTH CARE SYSTEMS, INC.,
d.b.a. Care Entree,
THE CAPELLA GROUP, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 24, 2008)**

Before ANDERSON, BLACK and HILL, Circuit Judges.

PER CURIAM:

Appellants Dr. William Andrew Rivell and Dr. Alan B. Whitehorse filed this action on behalf of themselves and similarly-situated Georgia physicians. Their amended complaint pleads equitable and legal claims against The Capella Group, Inc., d/b/a/ Care Entree ("Capella") and Private Health Care Systems ("PHCS") for appropriation of the doctors' names and identities to market and sell medical discount cards. On defendants' motions, the district court dismissed the complaint, holding that the doctors' sole remedy was on the contract they entered into with defendant PHCS. Because this holding is contrary to Georgia law, we shall reverse.

I.

Appellants are providers of medical care and services. They entered into a contract with PHCS, which is a preferred provider organization. As contractees with PHCS, appellants were participants in the PHCS network, which offers discounted rates on medical services. In exchange for appellants' discounting their fees, PHCS referred insured patients to them. Capella is a medical discount card company that has an agreement with PHCS that gives Capella "access" to the PHCS network, from which, it is alleged, Capella used appellants' names, professional identities and practice information to sell its medical discount cards.

2

Appellants contend that PHCS and Capella appropriated their names, professional identities and practice information without their consent to sell the medical discount cards for commercial gain. They seek declaratory, injunctive and other equitable relief, as well as damages. Among other claims, the Amended Complaint pleads a claim against PHCS and Capella for the tort of appropriation.

Capella and PHCS filed motions to dismiss in which they argued that the doctors' claims arise under the contract between PHCS and the doctors and that the tort claim of appropriation should be dismissed. The district court agreed and dismissed this claim, as well as the remaining claims.[1] We review this dismissal *de novo*, applying the same standard as did the district court. *Hoffman-Pugh v.*

---

[1] Although the district court purported to dismiss all appellants' claims against defendants, there appears to have been only one real claim at issue in this lawsuit. The amended complaint is divided into seven "counts," titled as follows:

| | |
|---|---|
| Count I: | Declaratory Relief |
| Count II: | Injunctive Relief |
| Count III: | Unjust Enrichment,; Imposition of Constructive Trust |
| Count IV: | Unauthorized Lease or Sale of Plaintiffs' Network Agreements and Provider Information by PHCS |
| Count V: | Appropriation of Plaintiffs' Names for Financial Gain |
| Count VI: | Punitive Damages |
| Count VII: | Attorneys' Fees |

"Counts" One, Two, Three, Six and Seven are requests for relief in various forms, not freestanding legal claims. Count Four appears to be a claim against PHCS for breach of contract; however, appellants specifically disavowed any such claim at the hearing on appellees' motions to dismiss and in their briefs. That leaves only Count Five, a claim for appropriation against both PHCS and Capella.

3

*Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002). The allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs. *Id.* at 1225. However, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, 127 S. Ct. at 1965). This rule does not "impose a probability requirement at the pleading stage." *Twombly,* 127 S. Ct. at 1965. Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Id.* "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d at 1296 (quoting *Twombly*, 127 S. Ct. at 1965).

## II.

The district court erred in dismissing appellants' appropriation and related claims. Georgia law is clear that the doctors' claim of misappropriation is not

4

preempted by their contract with PHCS.  See *Whisper Wear, Inc. v. Morgan*, 277 Ga. App. 607 (2006).  In *Whisper Wear*, a photographer entered into an agreement with a model to take pictures of her.  The model arrived with a voucher that the photographer signed, in which he agreed that the pictures would not be used for marketing without additional negotiations between the parties.  The photographer arrived with a general release, which the model signed and in which she agreed that the pictures could be used in any lawful manner the photographer desired.  The photographer sold the pictures to Whisper Wear, a company that used the pictures in its marketing.  Subsequently, the model sued Whisper Wear for the tort of appropriation.[2]

Whisper Wear argued that the model's sole remedy was on her contract with the photographer for his alleged breach of the voucher's terms restricting his right to use the photographs.  The Georgia court specifically rejected this argument, holding that the model's remedies were not limited to an action on her contract with the photographer.  Thus, even though there was a contract governing the use of the photographs, the court held that so long as the plaintiff alleges that the defendant has used plaintiff's name and identity for a commercial purpose and without his authorization or consent, he has properly alleged the tort of

[2]She settled prior to trial with the photographer.

5

appropriation. The court said that it was Whisper Wear's duty to ascertain what rights it possessed with regard to the model's photographs. *Id.* at 609. *See also McQueen v. Wilson*, 117 Ga.App. 488 (1968).

This rule is not, it appears, unique to Georgia. The courts of New York, California, Florida, Massachusetts, Connecticut, Ohio and Illinois have all recognized that a use outside the scope of the permission granted in a contract not only constitutes breach of contract, but also gives rise to an action by the licensor for invasion of privacy or infringement of the right of publicity. *See Dzurenko v. Jordache, Inc.*, 59 N.Y.2d 788 (1983) ("For a use beyond the granted consent [plaintiff] has an action under [New York privacy and publicity statute] . . . and is not limited to an action sounding in contract); *Leavy v. Cooney*, 214 Cal. App. 2d 496, 501 (2d Dist. 1963) (use of outside agreement constitutes both breach of contract and tortious invasion of privacy); *Aim v. Wester Pub. Co.*, 573 F.2d 1318, 1327 (5th Cir. 1978) (use of author's name outside of use permitted in publishing contract is tortious, interpreting Florida law); *Donoghue v. IBC USA (Publications) Inc.*, 70 F.3d 206 (1st Cir. 1995) (use in advertising that is not authorized by the license between the parties constitutes violation of Massachusetts' privacy/publicity statute); *Seifer v. PHE, Inc.*, 196 F. Supp. 2d 622, 631 (S.D. Ohio 2002) (grant of sub-license was not authorized by the license

6

and triggered a claim for infringement).

The district court held to the contrary in this case largely because of the dependence of all parties upon the Network Agreements in their arguments over whether PHCS was entitled under the Agreements to sub-license the doctors' names and other information to Capella. The Network Agreements, however, are merely some evidence of consent or lack thereof, which is the affirmative defense to the tort of appropriation. Similarly, in *Whisper Wear*, the jury was permitted to hear and consider the contract evidence of consent – found in the conflicting voucher and the general release.[3] Deciding that the voucher controlled, the jury found that the model had not consented to the use of her photos made by Whisper Wear and awarded her damages for its tortious use. Similarly, in this case, the Network Agreements will be some evidence of whether Capella's use of the doctors' names and identities was with consent.

---

[3]At oral argument, defense counsel attempted to distinguish *Whisper Wear* on the grounds that there was no disagreement in that case over whether Whisper Wear's use of the photographs was permitted. This is not so. The court merely said that it was "undisputed that Whisper Wear used the photographs in a manner that was not authorized under the *voucher* signed by [the photographer]." 277 Ga. App. at 608. (emphasis added). The jury resolved the contested issue of whether the voucher trumped the general release signed by the model, finding that it did. *Id.* at 609-10.

## III.

Accordingly, for the foregoing reasons, the judgment of dismissal by the district court is hereby VACATED and the case is remanded for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.