## H. Tibbe & Son Manuf'g Co. v. Heineken.

(*Circuit Court, S. D. New York.* February 18, 1889.)

1. Patents for Inventions—Anticipation—Corn-Cob Pipes.

   Letters patent No. 205,816, July 9, 1878, to Henry and Anton Tibbe, the claim of which is, "as a new article of manufacture, a smoking pipe made of corn-cob, in which the interstices are filled with plastic self-hardening cement," plaster of Paris being indicated in the specification as a suitable plastic cement, are void for want of invention; corn-cob pipes, the bowls of which were lined with plaster of Paris, or a plastic cement prepared from meerschaum dust, having been manufactured and sold more than two years before application for the patent.

2. Same—Estoppel to Deny Validity—Former Licensee.

   One who has had a license to sell a patented article is not thereby estopped from questioning the validity of the patent in vindication of acts done since the license expired.

3. Same—Attorney in Fact.

   One who, under power of attorney from the patentees, conveys the patent-right, and who, under another agreement, receives a proportion of the proceeds of the sale, the patent being conveyed by the assignee, through mesne conveyances to the original patentees, who convey to another, is not thereby estopped, either by deed or *in pais*, from denying that the patent is valid.

In Equity.

On motion for preliminary injunction. Bill by H. Tibbe & Son Manufacturing Company against William L. Heineken for the infringement of a patent.

*Paul Bakewell* and *Abram J. Rose*, for complainant.

*Louis C. Raegener*, for defendant.

Lacombe, J. This is an application for a preliminary injunction to restrain infringement of letters patent No. 205,816, of July 9, 1878, granted to Henry and Anton Tibbe for "improvement in pipes." There has been no adjudication in support of the patent, except a decree which, being on consent, need not be regarded. Complainant insists that the validity of the patent has been suitably acquiesced in by the public, showing that its sales of articles covered thereby have run up into the millions. The weight of this argument is greatly weakened by the facts shown in defense, viz.: That the defendant has been manufacturing the same pipes continuously, and to a considerable extent, since 1883; that the Tibbes, through their solicitor, threatened to prosecute him for infringement four years ago; that he then retained counsel, and insisted that he had a right to manufacture and sell, communicating that fact to their solicitor; and that he has ever since openly continued the manufacture and sale of his pipes undisturbed by complainant or his grantors. In view of the other facts disclosed by the papers, this branch of the subject need not be discussed. We may concede that the letters patent and proof of exclusive enjoyment make out a *prima facie* case, and proceed at once to determine whether defendant's answering affidavits are sufficient to defeat that case. The claim of the patent is: "As a new article of manufacture, a smoking pipe made of corn-cob, in which the interstices

are filled with plastic self-hardening cement." In the specification, plaster of Paris is indicated as a suitable plastic cement. Inspection of the specification and drawings indicates that the patentee contemplated securing a patent upon other features of his pipe, such as the shape, stem, etc., but these were all abandoned before issue, and the only claim retained in the patent is for filling the interstices, as above indicated. When a dry corn-cob is trimmed and hollowed out to a shape suitable for a pipe, it appears from an examination of the exhibits submitted with the papers that there are a great many interstices, both on the inside and the outside of the bowl. It further appears from defendant's affidavits that more than two years prior to the application for the patent one Charles F. Willis manufactured corn-cob pipes, known and advertised as "Jackson Pipes," which were extensively sold in New York and Philadelphia. The bowls of these pipes were lined with plaster of Paris, or a plastic cement prepared from meerschaum dust. This lining of course filled up the interstices on the inside of the bowl precisely in the same way as does the "plastic self-hardening cement" of the patent. Such being the state of the art, there was no invention in filling the outside interstices in the same way, and the patent is clearly void.

The complainant, however, contends that the defendant cannot be heard to deny the validity of the patent in suit. It appears that in May, 1879, the patentees Henry and Anton Tibbe gave to defendant an exclusive license to sell these pipes, agreeing not to appoint any other agents to sell, nor to sell or assign the patent without his consent; he to have 25 per cent. of all sales. This agreement expired by its own limitation May 14, 1885, and there is no authority for the proposition that a former licensee is estopped from questioning the validity of a patent, after his license expires, in vindication of acts done subsequent to its termination.

It is also shown that, the patent standing in the name of Henry Tibbe and Anton Tibbe, copartners, they executed a power of attorney to the defendant (June 13, 1879) to sell for them and in their names all their right, title, and interest in the patent. By some other agreement, not expressed in the power of attorney, he was to receive 25 per cent. of the proceeds of the sale of the patent-right. Acting under this power of attorney, and referring to it as his authority, the defendant conveyed the patent-right to one George Winzer. By various mesne conveyances it subsequently returned (November 5, 1882) to the firm of Henry and Anton Tibbe, into which partnership one Kauman had by that time been admitted. These last, with two other persons, subsequently organized the complainant corporation, and conveyed the patent to it February 1, 1887. Under these circumstances, the question arises whether the defendant is estopped, either by deed or *in pais,* from denying the validity of the patent. After examination of the documents submitted, and of the authorities cited by the complainant, I am inclined to the opinion that he is not. The power of attorney was, for all that appears, revocable at pleasure of the Tibbes; and the conveyance executed by defendant to Winzer was in law their conveyance, not his. It is therefore not his own grant that he seeks to derogate from. The circumstances that he

·shared in the profit obtained from the sale to Winzer, and would thus ·be estopped *in pais* from questioning the character of what was sold, might be availed of by a subsequent grantee, who stood in Winzer's shoes, but no authority is ·cited which would secure the same benefit to the original circulator of an invalid patent, except perhaps the English case, *Chambers* v. *Crichley*, 33 Beav. 374. On principle there is no more reason why the defendant should be estopped, as against the Tibbes, from questioning the validity of their patent because he has shared in the proceeds of its sale, than there would be because he has shared in the proceeds of the sale of the articles made thereunder. As the point raised, however, is a new one, and a restraining order was granted in the case, the defendant should only be relieved from its operation upon proper terms. Let the defendant give a bond for $2,000, and file monthly statements of the number of infringing pipes sold, with leave to complainant to move for an increase of security as the facts may warrant. Upon these terms the motion to continue injunction is denied.