L. M. MONTGOMERY MACDONALD *vs.* THE PAGE COMPANY & another.

Suffolk.    January 20, 23, 30, 1928.— June 28, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction*, Accounting: for profits from unlawful publication. *Tender. Profits. Evidence*, Presumptions and burden of proof. *Equity Pleading and Practice*, Master: findings; Decree.

By a previous decision by this court in a suit in equity by an authoress against a publisher to enjoin the defendant from publishing a book from manuscript of the plaintiff which, the plaintiff alleged, the defendant was not authorized to use, it was held that the plaintiff was entitled to an injunction, and the suit was recommitted to a master to take an account of profits. The master found that the defendant had made a contract with a publishing company, whereby the company had the right, for a certain royalty, to publish a certain number of volumes from

eight titles, one of which was the one concerned in the suit, and whereby the number published under each title was at the option of the company; and found that it could not be ascertained how many copies of the plaintiff's book had been or would be published by the company; that it was impossible to state the value of such book as compared with the seven other titles; and that the defendant should be charged with one eighth of the royalties under the contract with the company. *Held*, that the last finding was not irreconcilable with the other facts found and must stand.

The master in the suit above described found that a certain number of copies of the plaintiff's book were sold after a judge of the Superior Court had ordered an injunction to issue; that a certain number were sold by the defendant after rescript from this court overruling the defendant's exceptions to such order; that a certain number of unsold copies were tendered to the plaintiff during trial of the suit; and that publication by the defendant of the plaintiff's book was done under a misapprehension by the defendant of his rights and was not an act of literary piracy. The master allowed the defendant in the accounting "all those expenses of publishing and marketing which are directly attributable to this book." *Held*, that

(1) In view of the master's findings, a contention by the plaintiff, that the defendant should not be allowed such expenses because he had acted unconscionably, was unsound;

(2) Even if the defendant had knowledge of the order for an injunction and disobeyed it, that fact did not overcome the master's finding that the defendant mistakenly believed he had a right to publish and market the book.

An interlocutory decree after rescript in the suit above described, directing "an account of profits," meant an account of net as distinguished from gross profits.

In accordance with such decree, the master stated an account in which he allowed the defendant certain items of expense in the publication of the plaintiff's book. *Held*, that

(1) An allowance to the defendant, for electrotype plates, illustration cuts, a painting from which a design on the cover and jacket of the book was copied, and the frame of the painting, advertising, publicity material, binding and copyrighting, could not be said clearly to have been wrong, and it must stand;

(2) An allowance to the defendant for expense in connection with the unsold copies tendered to the plaintiff was erroneous, since there were no profits from those books against which the expense could be charged;

(3) An allowance to the plaintiff of interest subsequent to the filing of the bill, computed on the net profits for each year from the end of each year to the time of the master's report, was proper.

The master in the suit above described stated in his report that no evidence was offered to show that the defendant's overhead or general expense, or certain taxes paid by the defendant, were increased by the publication and marketing of the plaintiff's book; and ruled that no part of such expenses should be allowed the defendant in the accounting. *Held*, that

(1) The burden was on the defendant to show what part of such expenses was equitably chargeable to the plaintiff's book;

(2) The defendant having failed to sustain such burden of proof, the disallowance of such expense by the master was proper.

The defendant in the suit above described claimed an allowance in the accounting of a certain sum paid by him to the plaintiff, on the ground that the contract between him and the plaintiff was made through mistake as to the subject matter. Nothing appeared in the previous opinion in the suit to support such a contention. *Held*, that

(1) Such claim by the defendant was a matter for which relief could have been had at the original hearing of the suit on the merits;

(2) Failure on the defendant's part to assert such a defence seasonably was fatal to his right to establish the claim in the accounting.

BILL IN EQUITY, filed in the Superior Court on April 24, 1920, and afterwards amended, seeking to enjoin the defendant from publishing a book, "Further Chronicles of Avonlea," from manuscript of the plaintiff which, the plaintiff alleged, the defendant was not authorized to use; and for an accounting of profits realized by the defendant from the unauthorized publication and sale, and for damages.

The suit previously was before this court upon exceptions by the defendant to an order by *Hammond*, J., overruling exceptions to the report of a master to whom the suit had been referred, and ordering a decree for the plaintiff granting an injunction and recommitting the suit to the master to take an account of profits. The defendant's exceptions were overruled by this court in a decision reported in 251 Mass. 299.

After rescript, an interlocutory decree described in the opinion was entered by order of *Hammond*, J. Material facts found and portions of an account stated by the master are set forth in the opinion. The master also stated in his report that the real estate tax referred to in the opinion was a constant expense and was not increased by the publication of the plaintiff's book; and that there was no evidence that the "Massachusetts State Tax" and "Capital Stock Tax" were increased by such publication. After a hearing by *Morton*, J., there were entered by his order interlocutory decrees denying a motion by the defendant to recommit the report, overruling exceptions by both parties to it and confirming it; and a final decree ordering the defendant to pay

the plaintiff the sum of $16,121.44, the sum found to be due by the master, with interest to the date of the decree, together with costs. The plaintiff and the defendant The Page Company appealed from the decrees.

The case was argued at the bar in January, 1928, before *Rugg*, C.J., *Braley, Pierce, Carroll, & Sanderson*, JJ., and afterwards was submitted on briefs to all the Justices.

*W. A. Rollins*, (*S. A. Jones* with him,) for the plaintiff.

*Asa P. French*, for The Page Company, submitted a brief.

PIERCE, J. After the judgment and rescript, in the case entitled *MacDonald* v. *Page Co.* in 251 Mass. 299, the case came before a judge of the Superior Court who entered, on July 3, 1925, an interlocutory decree; so far as is material to the present inquiry it reads: "That the defendant . . . has published and sold in 'Further Chronicles of Avonlea' stories written by the plaintiff and belonging to her which it was not authorized to publish, and that the plaintiff is entitled to an injunction against further publication and/or sale of the same and to the profits made by the defendant . . . from the said publication . . . [and] That this cause be recommitted . . . to take an account of the profits made by the defendant . . . from the sale of said 'Further Chronicles of Avonlea.'" On December 24, 1925, the cause was referred to a master to "hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party may request." The report of the master was later filed and confirmed, and the case comes again before this court on the appeals of both the plaintiff and the defendant The Page Company (which will herein be called the defendant) from decrees of the Superior Court, the question presented being, in substance, how much the plaintiff is entitled to on an accounting for profits from the sale of the book called "Further Chronicles of Avonlea."

The master finds that the total number of books sold from 1920 to 1925 inclusive was nineteen thousand, eight hundred ninety and that the defendant received therefor $20,360.10. Of the foregoing, one thousand, two hundred sixty-six copies were sold after April 9, 1923, the date of the judge's decision which was affirmed in 251 Mass. 299, and four hundred

thirty-eight were sold after February 24, 1925, the date of the decision in this court.    On April 27, 1925, the defendant entered into a contract with George G. Harrap & Company, Ltd. of London, England, by which the former licensed and granted the latter "the exclusive right to print, publish and vend for the British Market exclusively," one hundred thousand copies, and no more, of eight titles, including "Further Chronicles of Avonlea" to sell for "3/6d. net," in return for a royalty of nine cents a copy, totalling $9,000.    The contract provided that "An edition of each of these eight titles is to be included in the total of one hundred thousand (100,000) volumes, but the individual quantities of each title are at the option of GEORGE G. HARRAP & COMPANY, LTD."    On the contention of the defendant, that the Harrap company reported it had published five thousand copies of the book and therefore it should account to the plaintiff for that amount only, which represents the ratio between one hundred thousand, the whole number of books limited in the Harrap contract, and five thousand, that is, five per cent of $1,125, the master found that the statement of the number of books published by the Harrap company was hearsay only, and that it cannot be ascertained how many copies of the book have already been published or will be published hereafter.    "It is of course impossible to determine with mathematical accuracy the value of 'Further Chronicles of Avonlea' as compared with each of the seven other books mentioned in the Harrap contract."    The master found that $1,125, one eighth of the contract price, should be charged against the defendant on account of the book, because that allocation is fair and equitable to both plaintiff and defendant. This finding is not irreconcilable with other facts found, and on familiar principles must stand.    *Glover* v. *Waltham Laundry Co.* 235 Mass. 330.

The master finds that in this book there are two stories printed from manuscripts furnished by the plaintiff to the defendant which do not come under the ban of publication as do the other stories in the book, and it is contended by the defendant that a proportional allowance for the expense of paper and printing should be made to the defendant, based

upon the ratio which the number of pages in these two stories bears to the number of pages in the whole book.  He found and ruled "that the publication of this book by the defendant was not an act of literary piracy"; that "at the time of publication the defendant mistakenly believed it had a right to publish and market the book"; and that it "misinterpreted its contract with the plaintiff."  He further ruled that "the defendant [plaintiff] is entitled to full compensation from the defendant," but "The defendant nevertheless should be allowed in this accounting all those expenses of publishing and marketing which are directly attributable to this book."  The publication of the book, with the exception of four hundred and thirty-eight copies, took place before the date of rescript.  "During the trial, the attorney for the defendant in whose custody and possession the unsold copies of the book were [that is three hundred and seven books], made a tender of said unsold copies to the attorney for the plaintiff by offering to said attorney one copy of the book, declaring that the remaining unsold copies were at hand and at the disposal of the plaintiff."  The master found "that this was a good and sufficient tender and that the unsold copies are now constructively in the possession of the plaintiff and at her disposal."

The plaintiff's objections taken to the findings or rulings of the master to the effect that the tender of the unsold copies was a good tender, that the publication of "Further Chronicles of Avonlea" by the defendant was not an act of literary piracy, that at the time of publication the defendant mistakenly believed it had a right to publish and market the book, and to the further finding that the defendant should be allowed for all expenses of publishing and marketing directly attributable to "Further Chronicles of Avonlea," are based largely upon her contention, which is not disputed by the defendant, that the title of the plaintiff to her literary property was legal as distinguished from equitable and that she was entitled to legal as well as equitable remedies, citing *Levyeau* v. *Clements,* 175 Mass. 376, *Baker* v. *Libbie,* 210 Mass. 599, and 13 C. J. 991; and on the assumption that the defendant stands in the situation of a wilful trespasser who

knowingly has taken the tangible property of another and has increased its value by a change in its form. *Peirce* v. *Goddard*, 22 Pick. 559, 561. The reasoning suggested is that the plaintiff's manuscript and the defendant's paper were united and that the plaintiff is entitled to the product or its value without deduction for the contributing addition of the defendant. The plaintiff recognizes that usually, in equity, the defendant, if innocent, would be allowed some part of the proceeds, and that the money received from the book could be divided, but contends that the defendant here does not come into court with clean hands; that it has acted unconscionably in keeping copies of the plaintiff's stories in 1912 which it ought not to have done, in publishing after notice of the plaintiff's claim of right and prohibition against publishing, in continuing such publication during the litigation brought to stop it and even after order for injunction and final decision of this court; and that it therefore should be left in the position it occupies at law.

In view of the finding that the defendant mistakenly believed it had the right to publish and market the book, which must be taken to be true in the absence of the evidence before the master, the argument is unsound. It is said in *Freeman* v. *Freeman*, 142 Mass. 98, at page 102, speaking of the right of an owner against the infringer of a patent, "the rule appears to be well established, that the profits from the use of the patent would be fairly ascertained by finding the difference between the cost of the articles produced and the amount received from the sales thereof." Where a defendant has acted in bad faith he may not be allowed the value of improvements made. See *Levyeau* v. *Clements, supra*; *Callaghan* v. *Myers*, 128 U. S. 617, 664; *Pan American Petroleum & Transport Co.* v. *United States*, 273 U. S. 456, 509; *Mammoth Oil Co.* v. *United States*, 48 Sup. Ct. Rep. 1, 11. The fact, if it be one, that the defendant had knowledge of the order for an injunction and disobeyed it, does not in itself overcome the finding of the master, in substance, that the defendant mistakenly believed it had the right to publish and market the books. See *Dickinson* v. *O. & W. Thum Co.* 8 Fed. Rep. (2d) 570, 574.

The interlocutory decree directing an "account of profits" by fair intendment means an account of net as distinguished from gross profits. In regard to the general question of profits to be accounted for by the defendant, it was said in *Callaghan* v. *Myers, supra,* page 665, "the only proper rule to be adopted is to deduct from the selling price the actual and legitimate manufacturing cost." The plaintiff contends under this decision that electrotype plates, illustration cuts, the painting from which the red-haired girl on the cover and jacket was copied, and the frame of the painting, were expenditures for which she should not equitably or legally be held to pay. The master allowed all these items, amounting to $822.22, "on the ground that these expenditures were either necessary to successfully manufacture the book, like electrotyping, or were essential to make it a pleasing and saleable book." As it cannot be said that the master adopted an erroneous rule of law or that his finding was clearly wrong, it must stand. *Glover* v. *Waltham Laundry Co., supra,* page 334. *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576, 580. This disposes of the further contention that the expenses of advertising, of publicity material, of the costs of binding and of the costs of copyrighting should not be deducted from the gross profits.

The plaintiff further contends that $128.94, the cost of three hundred and seven unsold copies, which were tendered to her attorney at the trial, was not a proper deduction because there were no profits from books not sold and therefore there could have been nothing to charge against profits. This position is sound and the account in this respect is erroneous. *Nelson* v. *J. H. Winchell & Co.* 203 Mass. 75. *Callaghan* v. *Myers, supra,* page 664.

The defendant does not dispute the finding of the master that the gross amount chargeable against it was $21,545.60, but contends, in support of its objection, that the master erred in ruling, in effect, that no overhead or general expense of the business should be charged against the "Further Chronicles of Avonlea" in arriving at the net profits. As to this the master in substance finds that no evidence was offered before him that such expenses of the defendant were

increased by the publication and marketing of the book. There are no facts found by the master and no evidence reported which would enable the master or this court to determine the equitable share of the "overhead" which should be attributed to the production and marketing of this book. For the reason that the defendant has not sustained the burden of proof which is upon it we think, without discriminating between the several items representing the claim of the defendant, that the objection of the defendant was overruled rightly. The master gives as a second reason that in his opinion it is inequitable that the defendant should charge against this book, which it had no legal right to publish, any part of its general overhead expenses. We think it plain that there necessarily were in the business of the defendant overhead charges and we do not examine too closely the inequity of an allowance for such, *William Wrigley, Jr. Co.* v. *L. P. Larson, Jr. Co.* 5 Fed. Rep. (2d) 731, 744, *Cutter* v. *Gudebrod Brothers Co.* 190 N. Y. 252, 254; but the burden of proof was upon the defendant to show what share of the overhead expense was attributable to the general business of the defendant and what proportion thereof should be a charge against this book. *Dickinson* v. *O. & W. Thum Co.*, *supra*, pages 573, 574.

The burden of proof was also upon the defendant to show what part of the "Boston Real Estate Tax," of the "Massachusetts State Tax," of the "Capital Stock Tax" or of any similar tax, if such there were, was equitably chargeable to this book; failing so to do its objection was overruled rightly. The defendant's objection to the addition of interest subsequent to the filing of the bill on May 6, 1920, computed on the net profits for each year from the end of each year to February 1, 1927, the time of the making of the master's report, "on the ground that upon all the circumstances, and in view of the silence of the interlocutory decree with respect thereto, none should be allowed," was overruled rightly. The defendant could have ascertained and, so far as appears, it knew the exact amount of net profits from year to year from the sale of the book, and presumably had the gain

which interest gives on the annual net profits of its business. *Cutter* v. *Gudebrod Brothers Co., supra,* pages, 254, 255.

The defendant asks the court to allow it $3,000, paid by it to the plaintiff under the contract in which the defendant mistakenly believed it had purchased certain royalty rights of the plaintiff. This claim is put upon the ground that the contract was made through mistake as to the subject matter of the contract. There is nothing in the opinion in 251 Mass. 299, to support such a contention, and it was a matter for which legal relief could have been had. *Hecht* v. *Batcheller,* 147 Mass. 335. The failure to assert this defence seasonably is fatal. *Flint* v. *Bodge,* 10 Allen, 128, 130. *Nelson* v. *J. H. Winchell & Co.* 203 Mass. 75, 85, 86.

It results that the objection of the plaintiff to the interlocutory decree affirming the master's report is sustained only in so far as that report finds that the amount due the plaintiff should be reduced by $128.94, that is, the production cost of three hundred and seven copies of the book unsold but tendered to the plaintiff by the defendant. All other objections of the plaintiff and all objections of the defendant to the decree affirming the master's report are overruled. It follows that the final decree is reversed in so far as it determines the amount to be paid the plaintiff by the defendant, and the case is remanded to the Superior Court to restate the account in conformity with this opinion.

*Ordered accordingly.*