## Mary T. Eno, administratrix, *vs.* Prime Manufacturing Company.

Norfolk.   December 8, 1942, October 28, 1943. — October 29, 1943.

Present: Field, C.J., Donahue, Qua, Dolan, & Ronan, JJ.

*Contract*, Construction, Validity, Use of patented process, Implied. *Patent*. *Profits*. *Damages*, For breach of contract, Nominal. *Evidence*, Presumptions and burden of proof, Documentary evidence. *Jurisdiction*, Patent. *Estoppel*. *Equity Jurisdiction*, Nominal damages. *Equity Pleading and Practice*, Question of law or fact, Injunction, Intervention.

A contract between the inventor of a process and a corporation controlling a machine for using the process, providing that the corporation should manufacture the machines and for a reasonable time distribute them and the materials used in the process to the trade and seek an adoption of the process by the trade so that, from practical experience so gained, a mutually satisfactory agreement "for the distribution of profits" might be reached between the inventor and the corporation; and that the corporation would "justly and properly compensate" the inventor "for the use of his invention in such arrangement as shall be satisfactory to all parties"; but that, if he and the corporation were unable within a reasonable time to enter into such an agreement, the corporation would cease using the process, impliedly required the corporation to compensate the inventor for use of the process during such trial period although the parties ultimately were unable to reach such an agreement and the inventor notified the corporation to cease use of the process; and the contract was sufficiently definite for maintenance of a suit by the inventor for such compensation.

Construction of the contract above described showed that the compensation of the inventor for use of his process during the trial period was contingent upon profits being realized during that period from the contemplated use of the process and of the machines as a unit; and, it appearing that no such profits were realized, no such compensation was due.

The owner of a patent for a process was not entitled to maintain an action for wrongful use of it during the period of an exclusive license for its use given by him to a third person.

Invalidity of a patent, although it would not bar a suit by the patentee against one who had been licensee for breach of the defendant's promise to the plaintiff not to use the patented process after termination of the license, would be a material factor in the determination of the plaintiff's damages.

The exclusive jurisdiction of the Federal courts of "all cases arising under

the patent right . . . laws of the United States" did not deprive the courts of this Commonwealth of jurisdiction to determine the validity of a patent when that question became material in a suit by the patentee against one who had been licensee for breach of the defendant's agreement with the plaintiff not to use the patented process after the termination of his license.

One, who, after termination of a license given him to use a patented process, continued its use in breach of his contract with the patentee, was not estopped to show invalidity of the patent as bearing on the question whether the patentee was damaged by the breach.

A defendant, relying on invalidity of a patent on the question of damages in a suit by the patentee for use of the patented process in breach of the parties' contract, had the burden of proving such invalidity.

The determination on documentary evidence of the validity of a patent in view of previous patents granted to others was a question of law for the court.

The plaintiff, owner of a patent of a process, failed to show that he was damaged by use of the process by the defendant in breach of a contract with him where an examination of the state of the art as shown by his patent and by those of others established that the process was not an invention and that the patent was worthless.

A suit in equity will not be retained merely for the assessment of nominal damages for breach of a contract.

Any rights which the plaintiff, holder of a patent adjudged to be invalid, had through use by the defendant of the patented article in breach of his promise to the plaintiff not to use it were not sufficiently tangible as a practical matter to require the granting of an injunction against such use.

In a suit in equity based on breach of a contract, a petition to intervene properly was dismissed where it appeared that what rights the petitioner alleged he had did not arise under the contract.

BILL IN EQUITY, filed in the Superior Court on January 21, 1941.

The suit was heard on the question of liability by *Buttrick*, J., and, after the filing of a master's report on the question of damages, by *Williams*, J., by whose order a final decree was entered from which the plaintiff and the defendant appealed.

A petition of Eno Systems, Inc., to intervene was dismissed after a hearing by *Good*, J., and the petitioner appealed.

*D. P. Ranney*, for the defendant.

*M. Jenckes*, for the intervener.

*A. Brayton*, for the plaintiff.

RONAN, J.   The plaintiff, the administratrix of the estate

of Frank F. Eno, who, it is alleged, invented a certain process in the manufacture of shoes, seeks to recover compensation from the defendant for the use of the process under a license granted by him to the defendant on May 26, 1933, and terminating on May 16, 1940, and damages from the last mentioned date to July 1, 1941, for breach of the license agreement by the failure of the defendant to cease using the process upon the termination of its license. The suit was heard upon the issue of liability by a judge who made a report of the material facts and entered an interlocutory decree in accordance with these findings. The suit was then referred to a master for the assessment of damages. Two exceptions of the plaintiff were sustained and the remaining exceptions of both parties to the report of the master were overruled. The report as modified was confirmed. All parties appealed from a final decree enjoining the defendant from using the process, adjudging that there was nothing due the plaintiff for the use of the process by the defendant during the period of the license, and ordering the defendant to pay $20,670.19 as damages for the use of the process after the termination of its license, with interest.

It appears from the transcript of the evidence, the report of material facts, and the exhibits, that Eno claimed to have discovered a method by which insoles, too thin to channel a leather rib out of the sole itself through which it could be sewed to the upper of the shoe, could be used by making a rib out of adhesive tape with a filler which was to be attached to the lower surface of the insole. Ridderstrom, the president of the defendant, had developed a machine that would lay the adhesive tape on the insole in accordance with Eno's process. On May 26, 1933, the parties entered into a contract in the form of a letter signed by the defendant, a copy of which was assented to by Eno and retained by the defendant. This contract recited that Eno had developed a new method for making an insole and that Ridderstrom had developed a machine capable of putting this method in use. Both Eno and Ridderstrom were to furnish a certain attorney with the plans and other necessary information in order to enable the attorney to prepare applications for patents

on the process and the machine. The patent on the machine was to be assigned to the defendant. The defendant agreed to commence the manufacture of the machines and to purchase the adhesive tape and filler, and thereafter for a reasonable period to distribute these machines and materials to shoe manufacturers, and to endeavor to have them adopt the process in order that from the experience gained from the practical use of the process a mutually satisfactory agreement could be made between the plaintiff's intestate and the defendant "for the distribution of profits." The defendant agreed that it would "justly and properly compensate Mr. Eno, the inventor, for the use of his invention in such arrangement as shall be satisfactory to all parties," but that if they were unable within a reasonable time to enter into a contract for the distribution of the process then the defendant agreed to cease using it. The defendant commenced in February, 1935, and has since continued to furnish its machines to shoe manufacturers, to license them to use the process, and to supply them with the adhesive tape and filler. Eno secured United States patent No. 1,998,125 on April 16, 1935, and a Canadian patent, No. 356,557, on March 17, 1936. Eno, and after his death the plaintiff, carried on negotiations with the defendant for a permanent plan for the use of the process by the defendant including the amount of compensation that should be paid for its use, but these negotiations were unsuccessful and the plaintiff on May 16, 1940, notified the defendant to cease using the process. She gave a license on May 27, 1940, to Eno Systems, Inc., to use this process, and cancelled this license on June 30, 1941. *Eno Systems, Inc.* v. *Eno,* 311 Mass. 334, 336.

The defendant contends that the contract provided for a temporary arrangement, which was to continue only long enough to permit the parties to secure from actual experience in putting the machines and process upon the market an approximation of the profits and then to agree upon such apportionment of them as would give Eno fair compensation for the use of the process, and that, as the parties never agreed, this preliminary contract "was not a legal, binding contract and was void for uncertainty." One of

the purposes of this contract was to afford a reasonable trial period and if the parties, who, we assume, were acting in good faith, were unable to agree upon the compensation to be paid to Eno, then the transaction was to come to an end and the defendant was to cease using the process. The defendant, however, could not use the process for several years and, by failing to agree upon the share of the profits that should be paid to Eno, escape all liability to pay. The defendant was to "justly and properly compensate" Eno. These words, if they stood alone, were adequate to bind the defendant to pay fair and reasonable compensation for that which it had received. Contracts, phrased in somewhat similar words in defining the measure of compensation to those who have performed services or supplied materials in reliance upon the promised compensation, have been held sufficiently definite to maintain actions to enforce them. *Noble* v. *Joseph Burnett Co.* 208 Mass. 75. *Silver* v. *Graves,* 210 Mass. 26. *Brennan* v. *Employers Liability Assurance Corp. Ltd.* 213 Mass. 365. *Dixon* v. *Lamson,* 242 Mass. 129. *Ferris* v. *Boston & Maine Railroad,* 291 Mass. 529. *Fenton* v. *Federal Street Building Trust,* 310 Mass. 609. *Henderson Bridge Co.* v. *McGrath,* 134 U. S. 260. *Allan* v. *Hargadine-McKittrick Dry Goods Co.* 315 Mo. 254. *Von Reitzenstein* v. *Tomlinson,* 249 N. Y. 60.

The judge found that Eno had fully performed his part of the contract; that both Eno and the plaintiff had endeavored to agree with the defendant upon the amount of compensation to be paid for the use of the process, but that they were unable to do so, and that Eno and the plaintiff were not guilty of laches in failing to notify the defendant sooner than May 16, 1940, to cease using the process. The parties did not intend that the payment of compensation should be left entirely to the decision of the defendant. *Whitten* v. *New England Live Stock Ins. Co.* 165 Mass. 343. *McCrillis* v. *L. Q. White Shoe Co.* 264 Mass. 32. While it may not have occurred to them at the time the contract was executed that several years might elapse in fruitless negotiations to settle the matter of compensation, yet, from the language employed in their contract, the nature

of the subject matter with which it dealt, and the circumstances attending its execution, it is clear that the parties never contemplated that one of them should for years have the free use of the process. A contract is not necessarily incomplete because one of its terms was to be exactly fixed at a future time. If, as here, one of the parties intended to pay, and the other to accept, reasonable compensation, and the former has continued for years to enjoy the benefit of what it has received from the latter, then, although the parties have not agreed upon the amount of compensation, an obligation to pay for the use of the process could be implied. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87. *Evers* v. *Gilfoil,* 247 Mass. 219. *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246. *Weiner* v. *Pictorial Paper Package Corp.* 303 Mass. 123. *Corthell* v. *Summit Thread Co.* 132 Maine, 94. The source of Eno's compensation, however, was the profits, and the parties never contemplated that payment should be made upon any other basis or from any other funds. The implied obligation of the defendant was to be measured by a fair share of the profits, if any, that were derived from the business during this period. *Danforth* v. *Allen,* 8 Met. 334. *First National Bank* v. *Watkins,* 154 Mass. 385. *Barron* v. *International Trust Co.* 184 Mass. 440. *Baker* v. *James,* 280 Mass. 43. *Murphy* v. *Shinberg,* 304 Mass. 1.

Eno was hired by the defendant for a year in March, 1935, and for six months in October, 1937. His duties were to interview shoe manufacturers and to endeavor to have them use the process. He was paid wages for this work. While there was testimony by the defendant's treasurer that he and Eno had conferred in reference to making a new agreement for the use by the defendant of his process, yet there was a conflict in the testimony and the judge was not plainly wrong, as the defendant contends, in finding, as he did, that the contract of May 26, 1933, was not modified, cancelled or superseded by any arrangements made between Eno and the defendant at the times he was hired to work for the defendant. *Dean* v. *Washburn & Moen Manuf. Co.* 177 Mass. 137. *Makletzova* v. *Diaghileff,* 227 Mass. 100. *Allen* v. *Williams*

*Motor Sales Co.* 277 Mass. 295. *MacLaren* v. *Windram Manuf. Co.* 287 Mass. 221. *Bailey* v. *First Realty Co.* 305 Mass. 306. *Nicholson* v. *American Hide & Leather Co.* 307 Mass. 456.

The principal contention of the plaintiff is that the master erred in finding that the defendant had not secured any profits from the use of the process during the period of the license and that the defendant had suffered a loss. Although this period ended May 16, 1940, when the plaintiff notified the defendant that the license was terminated, the parties for convenience in dealing with bookkeeping entries have considered the period as ending on May 1, 1940, and the second period, which ended on July 1, 1941, as beginning on May 1, 1940, instead of May 16, 1940.

We are now concerned with the first period. The master found that the gross profits amounted to $49,651.85. He charged against these gross profits operating expenses of $79,951.70, which left a deficit of $30,299.85 which was reduced to $25,551.94 by crediting the defendant with the fair value of machines on hand at the end of this period. We see nothing in the computation of the operating expenses that was improper with the exception of two items, one for factory overhead and the other for office and administrative expense, which amount to $22,795.39. The defendant conducted four different lines of business and did not keep account of the cost which was incurred by it by the exploitation of Eno's process and which it included in office and administrative expenses. The master has found that the method the defendant used to apportion a part of the factory overhead and office and administrative expenses "to the innersole line of business bears no relation to the actual amount by which" these expenses were "increased by the defendant's undertaking and carrying on the particular line of business having to do with the Eno Process." Those two items should have been disallowed. *Regis* v. *H. A. Jaynes & Co.* 191 Mass. 245. *Nelson* v. *J. H. Winchell & Co.* 203 Mass. 75. *Grocers Supply Co.* v. *I. Renaud Co.* 234 Mass. 180. *MacDonald* v. *Page Co.* 264 Mass. 199. *Levin Bros.* v. *Davis Manuf. Co.* 72 Fed. (2d) 163. *Horvath* v. *McCord Radiator*

*& Manuf. Co.* 100 Fed. (2d) 326. But with the disallowance
of these items the report shows that during this period there
was a deficit of $2,756.55. The venture was not a commercial
success during this period. The parties contemplated that
the value of the use of the process was to be measured by a
share of the profits. The plaintiff was not entitled to com-
pensation for there "was nothing owing on the score of
profits." *Duplate Corp.* v. *Triplex Safety Glass Co.* 298 U. S.
448, 451. *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass.
100, 111.

The master has made an alternative finding based en-
tirely upon the gross income and gross expenses derived
from the sales of tape and filler, and considered apart from
the income and expenses heretofore discussed in treating
the undertaking as a unit, which included both the machines
and process. Under this alternative finding the accounting
would show a balance of $9,338.24 in favor of the plaintiff.
The master properly disregarded the testimony of the de-
fendant's treasurer that it was contemplated that the net
proceeds from the sales of tape and filler would be divided
somehow between the process and the machines. *Baker* v.
*Sanderson*, 3 Pick. 348, 355. *Goodell* v. *Smith*, 9 Cush. 592,
594. *Gold* v. *Boston Elevated Railway*, 244 Mass. 144, 147.
*Fenton* v. *Federal Street Building Trust*, 310 Mass. 609, 613.
The construction of the contract was for the judge. The
contract was plain and free from ambiguity. It called for
the adaptation of the process to commercial use by means
of the machines of the defendant. The process might be
applied by hand but it would probably be of little practical
use unless it could be mechanically applied to the insole
by a taping machine suitable for the purpose. Not only
the contract itself, but Eno's application for a patent,
shows that the defendant's machines were to be used in
laying the tape on to the insole. The parties to the con-
tract were to be compensated out of the profits of an un-
dertaking in which Eno's process and the defendant's ma-
chines complemented each other and together constituted
the means by which an insole with a stitch receiving rib
of adhesive tape with a core or filler could be produced.

The prosecution of the undertaking upon which the parties embarked included both the process and the machines and both should be treated as a unit in computing the profits. *Currier* v. *Hallowell*, 158 Mass. 254. *Merrell Soule Co.* v. *Powdered Milk Co. of America*, 7 Fed. (2d) 297. There was no error in overruling the plaintiff's fourth exception to the master's report which was directed to the failure of the master to find and rule that she was entitled to $9,328.24 for the use of the process during the licensed period. The accounting shows that there were no profits during this period and, as we have already said, the use of this process was to be paid for only out of profits; there was no error, on the facts reported, in denying the plaintiff compensation during the first period covered by the accounting.

We now pass to the question whether the plaintiff is entitled to an assessment of damages for the period beginning on May 16, 1940, and ending on July 1, 1941, on account of the wrongful use of the process by the defendant. The plaintiff, however, parted with the use and enjoyment of the process when on May 27, 1940, she granted an exclusive but not a sole license to Eno Systems, Inc., which continued until it was terminated on June 30, 1941. *Western Electric Co. Inc.* v. *Pacent Reproducer Corp.* 42 Fed. (2d) 116. *Paul E. Hawkinson Co.* v. *Carnell*, 112 Fed. (2d) 396. The right to the full use and enjoyment vested in this licensee and the conduct of the defendant constituted an interference with the use of the process by the licensee. If the patent was valid the plaintiff would have no right to proceed against the defendant as an infringer for damages sustained subsequent to May 27, 1940, for that right vested in the new licensee who could, in the name of the plaintiff, bring an action against the defendant for its wrongful use of the patent, and the damages, when collected, would belong to the licensee. *Gayler* v. *Wilder*, 10 How. 477. *Birdsell* v. *Shaliol*, 112 U. S. 485. *Waterman* v. *Mackenzie*, 138 U. S. 252. *Pope Manuf. Co.* v. *Gormully & Jeffery Manuf. Co.* 144 U. S. 248. *Independent Wireless Telegraph Co.* v. *Radio Corp. of America*, 269 U. S. 459. *E. W. Bliss Co.* v. *United States*, 253 U. S. 187. *Western*

*Electric Co. Inc.* v. *Pacent Reproducer Corp.* 42 Fed. (2d) 116.

The full use and enjoyment of the process being in the new licensee from and after the date of its license, the plaintiff is not entitled to damages for the wrongful use of the process during the period of such license. Our inquiry is narrowed down to the question whether she can recover for the period from May 16, 1940, to May 27, 1940. The defendant contends that the agreement of May 26, 1933, was based upon the implied condition that the process was patentable. If this were so, we would have to consider whether the promise of the defendant not to use the process was unenforceable for want of consideration. *Bliss* v. *Negus*, 8 Mass. 46. *Dickinson* v. *Hall*, 14 Pick. 217. *Bierce* v. *Stocking*, 11 Gray, 174. *Lester* v. *Palmer*, 4 Allen, 145. *Nash* v. *Lull*, 102 Mass. 60. *Harlow* v. *Putnam*, 124 Mass. 553. But the original agreement, besides this negative promise of the defendant, also included a license. This agreement was entire and indivisible and did not rest upon the implied condition urged by the defendant. The usual rule governing the interpretation of contracts respecting the issuance of licenses to manufacture and the use of an article covered by a patent is that the licensor does not warrant the validity of the patent. Walker, Patents, § 383. Am. Law Inst. Restatement: Restitution, § 24, Comment (f). A licensee who continues the use of a patented article in accordance with the terms of the license after the patent has been adjudged invalid may be liable for the payment of the royalty fixed by the license. *Standard Button Fastening Co.* v. *Harney*, 155 Mass. 507. *Standard Button Fastening Co.* v. *Ellis*, 159 Mass. 448. *Potterton* v. *Condit*, 218 Mass. 216. The parties, however, did not agree on what the defendant should pay for the use of the process subsequent to the termination of the license. The plaintiff is entitled to recover such damages as she proves were sustained by her as the natural and probable consequence of the breach of the contract by the defendant. *Wheeler* v. *Balestri*, 304 Mass. 257. *F. A. Bartlett Tree Expert Co.* v. *Hartney*, 308 Mass. 407. Ordinarily, the measure of damages to be assessed upon one who has wrongfully appro-

priated the trade name or trademark of another, or who, by simulating the wrappers or trade name of another or by some other device, has palmed off his goods on the public as and for those manufactured by such other person, is the actual harm that has thereby resulted to such other person or the profits that the wrongdoer has acquired. *Regis* v. *H. A. Jaynes & Co.* 191 Mass. 245. *Nelson* v. *J. H. Winchell & Co.* 203 Mass. 75. *C. A. Briggs Co.* v. *National Wafer Co.* 215 Mass. 100. *MacDonald* v. *Page Co.* 264 Mass. 199. Am. Law Inst. Restatement: Restitution, § 136. But the master's report does not show the damage incurred by the plaintiff or the profits obtained by the defendant from the use of the process in the period from May 16, 1940, to May 27, 1940, which, as we have said, is the only period subsequent to the cancellation of the defendant's license for which the plaintiff may rightly contend she is entitled to damages. The defendant contends that the plaintiff cannot recover any damages for this eleven-day period because the patent was invalid for want of novelty. While the invalidity of a patent would not bar an action to recover damages for the use of the patented article after the termination of a license against a licensee who had agreed that he would not use it after his license had ended, yet the invalidity of the patent would be a material factor in the determination of damages. *Jackson* v. *Allen,* 120 Mass. 64.

The first question arises as to the jurisdiction of a State court to determine the validity of a patent in a suit for damages for breach of a written contract by the wrongful use of the patented method by a former licensee. Exclusive jurisdiction "Of all cases arising under the patent-right . . . laws of the United States" is vested in the Federal courts. United States Constitution, art. 1, § 8. Judicial Code, § 256; U. S. C. (1940 ed.) Title 28, § 371. That there is a clear distinction between a case and a question arising under the patent laws has been frequently pointed out by this court, and it is settled that the courts of this Commonwealth have jurisdiction to pass upon the validity of a patent or the originality of an invention when that issue arises collaterally or is incidentally involved in a cause properly cognizable

in our courts. *Nash* v. *Lull,* 102 Mass. 60. *Holt* v. *Silver,* 169 Mass. 435. *Aronson* v. *Orlov,* 228 Mass. 1. *LaChapelle* v. *United Shoe Machinery Corp.* 272 Mass. 465. *Respro, Inc.* v. *Worcester Backing Co.* 291 Mass. 467. *George C. Miller & Co. Inc.* v. *Beagen,* 293 Mass. 54. *Pratt* v. *Paris Gas Light & Coke Co.* 168 U. S. 255, 259, 261. *Luckett* v. *Delpark, Inc.* 270 U. S. 496. *Becher* v. *Contoure Laboratories, Inc.* 279 U. S. 388. The court has jurisdiction in the present suit to determine the validity of the patent granted to Eno.

The next question is whether the defendant is estopped from raising this point. The defendant had been a licensee of the patent, and the general rule is that a licensee, continuing to enjoy the benefits of his license, is estopped, when sued for the royalty, to deny the validity of the patent. *Kinsman* v. *Parkhurst,* 18 How. 289. *Eureka Co.* v. *Bailey Co.* 11 Wall. 488. *United States* v. *Harvey Steel Co.* 196 U. S. 310. *Westinghouse Electric & Manuf. Co.* v. *Formica Insulation Co.* 266 U. S. 342. That principle is not applicable where the claim is for wrongful use of the patent after the termination of the license. We have already decided that the defendant does not owe the plaintiff anything for the use of the patent during the licensed period, and the present suit is therefore reduced to a claim for damages for the wrongful use of the patent after the termination of the license. Indeed, the position of the defendant in respect to this claim is not essentially different from that of one who is charged with infringement of a patent. In this situation, it is open to the defendant to challenge the validity of the patent. *H. Tibbe & Son Manuf. Co.* v. *Heineken,* 37 Fed. 686. *Tate* v. *Baltimore & Ohio Railroad,* 229 Fed. 141. *Eskimo Pie Corp.* v. *National Ice Cream Co.* 20 Fed. (2d) 1003. *International Burr Corp.* v. *Wood Grinding Service, Inc.* 34 Fed. (2d) 905. *Paine & Williams Co.* v. *Baldwin Rubber Co.* 113 Fed. (2d) 840.

The granting of a patent is weighty evidence that the device or method is new and useful and that the patentee was the first inventor. The burden is upon the defendant to negative novelty in the plaintiff's patent. *Nash* v. *Lull,*

102 Mass. 60. *Radio Corp. of America* v. *Radio Engineering Laboratories, Inc.* 293 U. S. 1. *Mumm* v. *Jacob E. Decker & Sons*, 301 U. S. 168.

Previous to the filing of an application by Eno, patents covering various methods of supplying a stitch receiving rib to the surface of an insole had been granted. See Orr, United States Patent No. 681,506, dated August 27, 1901; Preble, United States Patent No. 1,022,391, dated April 2, 1912; Poole, United States Patent No. 1,137,282, dated April 27, 1915; Poole, United States Patent No. 1,244,891, dated October 30, 1917; Arlidge, United States Patent No. 1,298,156, dated March 25, 1919; Poole, United States Patent No. 1,728,362, dated September 17, 1929; and Emerson, United States Patent No. 1,895,709, dated January 31, 1933. The application filed by Preble states that the method of cementing to the insole the textile material from which is formed the crease or rib to receive the stitches by which the insole is stitched to the upper of the shoe is not satisfactory. His method consisted in using celluloid instead of cement. The stitch receiving rib had a filler or core. Poole's Patent No. 1,137,282 was a method of making an insole by stitching to the insole a composite rib, consisting of a core strip and a covering strip of fabric of sufficient width to cover said core strip, and to provide attaching flaps on each side thereof, said covering strip embracing the core and being stitched to the insole at each side of the core. Poole's Patent No. 1,244,891 was a machine suitable for applying a stitch receiving rib to insoles. The method of making the insole was fully described. "In making the complete innersole, a body and a flat strip of textile fabric or other material suitable for forming the rib are fed together into the machine, and in the act of so feeding the strip it is folded or bent into the shape required for the rib as it approaches the innersole body. After being brought into contact with the said body stitches are passed through the rib-forming strip at one or both sides of the part which forms the rib. This operation is carried on progressively throughout the entire part of the sole on which the rib is provided, commencing at the beginning

point of the rib and continuing along the sole near one edge thereof toward the toe and back near the opposite edge of the sole to the point at which the rib ends, the strip being bent in the progress of thus applying it so as to follow approximately the outline of the sole." This application also sets forth that certain steps in the method may be omitted when adhesive is depended upon to secure the rib to the insole. Emerson's Patent No. 1,895,709 disclosed a method of cementing the fabric strip to the insole, then transversely gathering the strip near its outer edge so as to form an upstanding rib inside of which a filler or core might be inserted. Eno knew of the use of ribs made from duck, cotton or similar material attached to the insole. He stated in his specification that "Heretofore it has been proposed to use as a substitute for the channeled insole employed in shoe making an insole having a stitch-receiving rib distinct from the insole itself and attached thereto by stitches passing through the rib and the insole or through a fabric envelope enclosing such rib. By following the teaching of this invention an insole is provided having an upstanding rib distinct from the insole body and secured thereto by means other than stitching." The file wrapper shows that Eno was notified on October 18, 1933, that none of his claims was allowed; his application was amended by cancelling two claims. The examiner did not allow either of the two remaining claims and notified Eno on March 12, 1934, that these claims "are rejected on Emerson. It will be noted that Emerson's strip is applied progressively around the sole." They "are also rejected as unpatentable over Poole 1,137,282 in view of Emerson. Poole teaches the progressive application of an envelope and core member to an insole blank, while simultaneously covering the core member with the envelope. The substitution of cement as taught by Emerson for Poole's stitching is considered to be entirely obvious to one skilled in the art upon consideration of the two references." The application was finally rejected on July 24, 1934. Thereafter, Eno, his counsel and the examiner conferred and letters patent were issued on April 16, 1935, which were based upon two claims. The first claim

described the method as consisting of supplying to an "unchanneled insole, a strip of flexible material having adhesive over one face and of such width as to be capable of being folded to form a sewing rib between inner and outer base flanges and a core member for strengthening said fold, then progressively folding the adhesive face of said flexible strip closely about and against the sides and top of the core while simultaneously forming said out-turned base flanges thus cementing the core within the fold and progressively forming a unitary, cored sewing rib presenting two base flanges having an adhesive under face and continuously laying said sewing rib as it is progressively formed on one face of the insole adjacent to its edge under sufficient pressure progressively upon said flanges to cause adherence to the insole and to retain the cored rib in upstanding position thereon without additional securing means"; and the second claim included the first with the addition that the sewing rib is bent to an oblique position and away from the edge of the insole.   These claims measure the extent of the grant to Eno.   *Jackson* v. *Allen*, 120 Mass. 64.   *Burton* v. *Burton Stock Car Co.* 171 Mass. 437.   *General Electric Co.* v. *Wabash Appliance Corp.* 304 U. S. 364.   *Milcor Steel Co.* v. *George A. Fuller Co.* 316 U. S. 143.

The use of a fabric stitch receiving rib attached to an insole was nothing new at the time Eno filed his application.   Neither was there anything novel in sewing the fabric to the insole or in cementing it to the insole.   The principal difference between Poole's and Eno's methods was that in the first the attachment was made by stitching and in the second by adhesive.   An insole made by the Poole method and one made by the Eno method were introduced in evidence.   The substitution of an adhesive for stitching was not in these circumstances a discovery and it was not an invention.   It was not an advance which was not plainly indicated by the prior art.   The use of a rib containing a filler or core was nothing new in the art.   The methods of applying the fabric to the insole as shown by the patents already enumerated rested upon documentary evidence, and in that respect we stand in the same position as did

the trial judge.   The question whether there was anything
new and useful in the means employed by Eno in applying
the fabric, when examined with what already had been dis-
closed in the previous patents, is to be decided in accord-
ance with our own judgment, unaffected by the decision of
the trial judge.   *Harvey-Watts Co.* v. *Worcester Umbrella
Co.* 193 Mass. 138.   *Berry* v. *Kyes,* 304 Mass. 56.   *Veazie*
v. *Staples,* 309 Mass. 123.

The evidence of the experts was competent to explain
the meaning of certain terms in the letters patent, but the
construction of the claims included in the letters patent
was a question of law for the court.   *Seymour* v. *Osborne,*
11 Wall. 516.   *United States Industrial Chemicals, Inc.* v.
*Carbide & Carbon Chemicals Corp.* 315 U. S. 668.   In view
of the state of the art existing at the time Eno applied for
a patent, especially Poole's patent No. 1,244,891, we hold
that his process was anticipated by previous patents, and
that his process was not an invention but, at most, merely
called for the exercise of skill by one familiar with the art.
*John E. Thropp's Sons Co.* v. *Seiberling,* 264 U. S. 320.
*Alexander Milburn Co.* v. *Davis-Bournonville Co.* 270 U. S.
390.   *DeForest Radio Co.* v. *General Electric Co.* 283 U. S.
664.   *Electric Cable Joint Co.* v. *Brooklyn Edison Co. Inc.*
292 U. S. 69.   *Keystone Driller Co.* v. *Northwest Engineer-
ing Corp.* 294 U. S. 42.   *Paramount Publix Corp.* v. *Ameri-
can Tri-Ergon Corp.* 294 U. S. 464.   *Altoona Publix Thea-
tres, Inc.* v. *American Tri-Ergon Corp.* 294 U. S. 477.
*Toledo Pressed Steel Co.* v. *Standard Parts, Inc.* 307 U. S.
350.   *Standard Brands, Inc.* v. *National Grain Yeast Corp.*
308 U. S. 34.   *Detrola Radio & Television Corp.* v. *Hazeltine
Corp.* 313 U. S. 259.   *Cuno Engineering Corp.* v. *Automatic
Devices Corp.* 314 U. S. 84.   *Marconi Wireless Telegraph
Co. of America* v. *United States,* 320 U. S. 1.

The plaintiff had no statutory monopoly on the use of
the process.   Anyone, excepting only the defendant, could
use it without any let or hindrance by the plaintiff.   *Barett*
v. *Goodwin, ante,* 279.   A mere paper title to a thing that
every member of the public, except one, could freely use
for his own benefit cannot have any great commercial

value. See *Newburyport Institution for Savings* v. *Brookline,* 220 Mass. 300; *Hannaford* v. *Charles River Trust Co.* 248 Mass. 225; *Fred T. Ley & Co. Inc.* v. *Sagalyn,* 302 Mass. 488. The defendant cannot be held for the profits, if any, which were received during the eleven-day period in question, on any theory of a trustee ex maleficio which is applied in actions against infringers, unfair trade competitors, and others who wrongfully use for their own personal gain property owned exclusively by the plaintiffs. There is nothing to indicate that the plaintiff in the present suit was put to any expense or that she was deprived of anything that she would have acquired if the defendant had not used the process for the period in question. The plaintiff has failed to show that any actual damages were sustained by her on account of the defendant's breach of the contract. *Belknap* v. *Schild,* 161 U. S. 10, 25. *Westinghouse Electric & Manuf. Co.* v. *Wagner Electric & Manuf. Co.* 225 U. S. 604. *United Lens Corp.* v. *Doray Lamp Co. Inc.* 93 Fed. (2d) 969, 974.

Equity does not concern itself with the entry of a decree for nominal damages arising out of a breach of contract where no grounds for relief are shown. The fact that nominal damages might be assessed were this an action at law does not in equity prevent the entry of a decree dismissing the bill. *Cummings* v. *Barrett,* 10 Cush. 186, 190. *Cragin* v. *Jones,* 283 Mass. 474. *Fred T. Ley & Co. Inc.* v. *Sagalyn,* 302 Mass. 488. Compare *DiNardo* v. *Dovidio,* 312 Mass. 398. Nor do we think as a practical matter that the plaintiff's rights in the defendant's promise not to use the process in the circumstances of this case, are sufficiently tangible to call for the granting of an injunction.

It follows that the final decree must be reversed and a decree be entered dismissing the bill.

*Ordered accordingly.*

### THE SECOND APPEAL.

This is an appeal by Eno Systems, Inc., from a decree dismissing its petition to intervene as a party plaintiff.

The intervener was not a party to the contract between the plaintiff and the defendant which was the sole basis for the cause of action alleged. The intervener had no beneficial interest in that contract. If it had any standing, by virtue of its license from the plaintiff, to maintain an action against the defendant for the wrongful use of the process during the period covered by the license, then such an action could not be based upon the contract, but would have to rest upon a claim of infringement — a cause of action over which our courts have no jurisdiction.

We assume that an appeal lies to an order refusing intervention, but, as the petitioner had no interest in any cause of action arising out of the contract, there was no error in dismissing the petition. *Dillaway* v. *Burton,* 256 Mass. 568. *Check* v. *Kaplan,* 280 Mass. 170. *Piper* v. *Childs,* 290 Mass. 560. *New York* v. *New York Telephone Co.* 261 U. S. 312. *United States* v. *California Coöperative Canneries,* 279 U. S. 553, 556.

*Decree dismissing petition affirmed with costs.*